911 A.2d 427

**Clifford S. WALZER, et al.**

v.

**Keith J. OSBORNE.**

**No. 20, Sept. Term, 2006.**

Court of Appeals of Maryland.

Nov. 17, 2006.

Reconsideration Denied Dec. 14, 2006.

Joan F. Brault (Stuart N. Herschfeld, Brault, Graham, LLC, on brief), Rockville, for petitioners.

Jonathan A. Hodgson, Annapolis, for respondent.

David M. Kopstein, Seabrook, amicus curiae of Maryland Trial Lawyers Assn.

Argued before BELL, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

GREENE, J.

In this case, we must determine whether, under Md.Code (1974, 2002 Repl.Vol., 2006 Cum.Supp.), § 3–2A–04(b) of the Courts & Judicial Proceedings Article, known commonly as the Health Care Malpractice Claims Statute ("Statute"), a court must dismiss a medical malpractice claim when a medical malpractice claimant files a certificate of qualified expert without an attesting expert report attached thereto. In dispute is whether the attesting expert report must be attached to the certificate of qualified expert, or whether it is merely suggestive that the report be attached. In addition, there is a dispute as to the sanction for failure to attach the report: specifically, whether § 3–2A–04(b) requires dismissal of the claim. We shall hold that the language of § 3–2A–04(b) mandates that the certificate of qualified expert be complete, with an attesting expert report attached, and that dismissal of the claim without prejudice is the appropriate remedy when the claimant fails to attach the report in a timely manner. Thus, the trial court's interpretation of the Statute was correct and, accordingly, we shall reverse the judgment of the Court of Special Appeals.

## FACTUAL BACKGROUND

Keith J. Osborne ("Respondent") sought treatment from Clifford S. Walzer, D.M.D., of Walzer & Sullivan, D.D.S., P.C. ("Petitioners"),[1] for a broken jaw and related injuries in August and September of 2000.[2] On August 27, 2003, Respondent initiated proceedings against Petitioners by filing a Statement of Claim with the Health Care Alternative Dispute Resolution Office ("Health Care Office")[3] of Maryland, alleging that Dr. Walzer was negligent in his treatment of Respondent. Respondent claimed that Dr. Walzer's treatment fell below the standard of care and, as a result of the treatment, Respondent's jaw was left permanently disfigured. On November 25, 2003, Respondent filed a certificate of qualified expert, executed by James S. Elmore, D.M.D., which provided that:

> I HEREBY CERTIFY that I am a doctor of dentistry, currently licensed to practice in the State of Pennsylvania, and that I do not devote annually more than twenty percent (20%) of my professional activities to the activities that directly involve testimony in personal injury claims. Further, I am a Board Certified Diplomat of the American Board of Oral–Maxillofacial Surgery.
>
> \* \* \*
>
> Based on my training, expertise and review of the records, it is my opinion that there were deviations from the standards of care and said deviations were the proximate result of Claimant Keith Osbourne's injury.

---

**1.** Respondent filed suit against Dr. Walzer, individually, and his professional corporation, Walzer & Sullivan, D.D.S., P.C.

**2.** On or about August 31, 2000, Respondent broke his jaw in a fight with one James Samuel Wellschlager, whom Respondent also sued. That action was resolved in favor of Mr. Wellschlager.

**3.** At the time that Respondent filed his claim, the office was known officially as the Health Claims Arbitration Office. See Md. Code (1974, 2002 Repl. Vol., 2006 Cum. Supp.), § 3–2A–03 of the Courts and Judicial Proceedings Article. The main statutory provisions in this case have not otherwise changed, but we shall refer to the office by its current name.

Respondent failed to attach to the certificate of qualified expert, an attesting expert report, as is required by § 3–2A–04(b)(3). After some discovery, Petitioners filed a waiver of arbitration.

On May 26, 2004, Respondent filed a complaint in the Circuit Court for Anne Arundel County. On June 17, 2004, the Petitioners filed an answer. On September 22, 2004, Petitioners filed a "Motion to Strike Respondent's Certificate and to Dismiss, or, in the alternative, for Summary Judgment." Respondent filed a response to the motion on October 29, 2004, to which he then attached an attesting expert report. The Circuit Court heard the case on December 15, 2004, and granted Petitioners' motion on the grounds that the attesting expert report was not attached to the certificate of qualified expert as required by Maryland law. The Circuit Court thereafter signed an Order of Dismissal without prejudice. Respondent filed a Notice of Appeal in the Court of Special Appeals on January 10, 2005.

On March 1, 2006, the Court of Special Appeals filed its reported opinion, *Osborne v. Walzer,* 167 Md.App. 460, 893 A.2d 654 (2006), holding that the language of the Statute does not require a court to dismiss a case when a claimant fails to attach an attesting expert report to the certificate of qualified expert. That court held that dismissal is appropriate only upon a showing that Petitioners suffered some prejudice, which it decided was not the case here. Petitioners filed a petition for writ of certiorari [4] in this Court, which we granted. *Walzer v. Osborne,* 393 Md. 242, 900 A.2d 749 (2006). For the reasons stated in this opinion, we reverse the judgment of the Court of Special Appeals and direct that the intermediate

---

**4.** Petitioners presented the following issue in their petition for writ of certiorari:

When a medical malpractice claimant's Certificate of Qualified Expert is filed without an attesting expert report, does Section 3–2A–04(b) of the Maryland Courts and Judicial Proceedings Code Annotated (2002 Repl.Vol.) require dismissal of the medical malpractice claim?

appellate court reinstate the judgment of the Circuit Court for Anne Arundel County.

## DISCUSSION

■ The parties dispute whether, under § 3–2A–04(b) of the Courts & Judicial Proceedings Article, the Statute requires a court to dismiss a medical malpractice action when a claimant fails to attach, in a timely manner, the required attesting expert report to the certificate of qualified expert. Section 3–2A–04(b) provides, in relevant part:

> (b) *Filing and service of certificate of qualified expert.*— Unless the sole issue in the claim is lack of informed consent:
>
> (1)(i) 1. Except as provided in subparagraph (ii) of this paragraph, a claim or action filed after July 1, 1986, shall be dismissed, without prejudice,
>
> if the claimant or plaintiff fails to file a certificate of a qualified expert
>
> with the Director[5] attesting to departure from standards of care, and
>
> that the departure from standards of care is the proximate cause of the
>
> alleged injury, within 90 days from the date of the complaint;
>
> \* \* \*
>
> (3)(i) The attorney representing each party, or the party proceeding pro se, *shall file the appropriate certificate with a report of the attesting expert attached.*

(Emphasis added.)

In addition, the parties dispute whether § 3–2A–04(b) requires a claimant to attach an attesting expert report to a certificate of qualified expert in a medical malpractice action,

---

5. The statute intends "Director" to connote the Director of the Health Claims Alternative Dispute Resolution Office. Md.Code (1974, 2002 Repl.Vol., 2006 Cum.Supp.), § 3–2A–01(d) of the Courts & Judicial Proceedings Article.

or whether that section merely suggests that claimants do so. The parties, the trial court, and the intermediate appellate court disagree, as to the sanction imposed for failure to attach an attesting expert report to a certificate of qualified expert. Respondent argues that the attachment requirement is not mandatory. Respondent and the intermediate appellate court's position is that the language of § 3–2A–04(b) does not mandate dismissal of a medical malpractice action for failure to attach the attesting expert report, but that, instead, the sanction is left to the discretion of the court and should be less harsh than dismissal. Petitioners and the Circuit Court disagree, contending that the language of the statute clearly mandates attachment of the attesting expert report and dismissal of the claim when the claimant fails to attach the attesting expert report as Respondent failed to do so in this case.

## A.

### Statutory Construction

We must first determine whether the Legislature intended dismissal of a complaint where the certificate of qualified expert did not include an attached expert report of the attesting physician. "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature." *Mayor and Town Council of Oakland v. Mayor and Town Council of Mountain Lake Park,* 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006); *Chow v. State,* 393 Md. 431, 443, 903 A.2d 388, 395 (2006) (citations omitted); *see also Johnson v. Mayor of Balt. City,* 387 Md. 1, 11, 874 A.2d 439, 445 (2005); *Moore v. State,* 388 Md. 446, 452, 879 A.2d 1111, 1114 (2005); *O'Connor v. Balt. County,* 382 Md. 102, 113, 854 A.2d 1191, 1198 (2004); *Mayor & City Council of Baltimore v. Chase,* 360 Md. 121, 128, 756 A.2d 987, 991 (2000).

As this Court has explained, "[t]o determine that purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning." *State Dept. of Assessments and Taxation v. Maryland–Nat'l Capital Park &*

*Planning Comm'n*, 348 Md. 2, 13, 702 A.2d 690, 696 (1997); *Montgomery County v. Buckman*, 333 Md. 516, 523, 636 A.2d 448, 452 (1994); *see also Chow*, 393 Md. at 443, 903 A.2d at 395 (stating that "[s]tatutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology") (citations omitted). We do so "on the tacit theory that the Legislature is presumed to have meant what it said and said what it meant." *Witte v. Azarian*, 369 Md. 518, 525, 801 A.2d 160, 165 (2002). "When the statutory language is clear, we need not look beyond the statutory language to determine the Legislature's intent." *Marriott Employees Fed. Credit Union v. MVA*, 346 Md. 437, 445, 697 A.2d 455, 458 (1997). "If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones v. State*, 336 Md. 255, 261, 647 A.2d 1204, 1206–07 (1994). In addition, "[w]e neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Taylor v. Nations-Bank, N.A.*, 365 Md. 166, 181, 776 A.2d 645, 654 (2001); *see Chow*, 393 Md. at 443, 903 A.2d at 395. " 'If there is no ambiguity in th[e] language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends....' " *Chow*, 393 Md. at 443–44, 903 A.2d at 395.

■■■■■ If the language of the statute is ambiguous, however, then "courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of [the] enactment [under consideration]." *Fraternal Order of Police v. Mehrling*, 343 Md. 155, 174, 680 A.2d 1052, 1062 (1996) (quoting *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730, 732 (1986)). We have said that there is " 'an ambiguity within [a] statute' " when there exist " 'two or more reasonable alternative interpretations of the statute.' " *Chow*, 393 Md. at 444, 903

A.2d at 395 (citations omitted). When a statute can be interpreted in more than one way, " 'the job of this Court is to resolve that ambiguity in light of the legislative intent, using all the resources and tools of statutory construction at our disposal.' " *Id.*

> If the true legislative intent cannot readily be determined from the statutory language alone, however, we may, and often must, resort to other recognized indicia—among other things, the structure of the statute, including its title; how the statute relates to other laws; the legislative history, including the derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process, and amendments proposed or added to it; the general purpose behind the statute; and the relative rationality and legal effect of various competing constructions.

*Witte,* 369 Md. at 525–26, 801 A.2d at 165. In construing a statute, "[w]e avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense." *Blake v. State,* 395 Md. 213, 909 A.2d 1020 (2006) (citing *Gwin v. MVA,* 385 Md. 440, 462, 869 A.2d 822, 835 (2005)); *see Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994).

In addition, " 'the meaning of the plainest language is controlled by the context in which it appears.' " *State v. Pagano,* 341 Md. 129, 133, 669 A.2d 1339, 1341 (1996) (citations omitted). As this Court has stated,

> [b]ecause it is part of the context, related statutes or a statutory scheme that fairly bears on the fundamental issue of legislative purpose or goal must also be considered. Thus, not only are we required to interpret the statute as a whole, but, if appropriate, in the context of the entire statutory scheme of which it is a part.

*Gordon Family P'ship v. Gar on Jer,* 348 Md. 129, 138, 702 A.2d 753, 757 (1997) (citations omitted). Lastly, "[s]tatutes in derogation of the common law are strictly construed, and it is not to be presumed that the legislature by creating statutory

assaults intended to make any alteration in the common law other than what has been specified and plainly pronounced." *Gleaton v. State,* 235 Md. 271, 277, 201 A.2d 353, 356 (1964); *See generally Robinson v. State,* 353 Md. 683, 728 A.2d 698 (1999)(discussing the proposition that statutes in derogation of the common law are to be construed narrowly, so as to not make any change in the common law beyond that which is expressly stated and necessary). " '[B]ecause statutes in derogation of the common law are disfavored, the maxim *expressio unius est exclusio alterius*[6] has been extensively employed to avoid repeal of the common law, and refuted in order to make the statute cumulative with it.' " *Waters v. State,* 220 Md. 337, 356–57, 152 A.2d 811, 821 (1959) (citations omitted). "Most statutes, of course, change the common law, so that principle [of narrow construction] necessarily bends when there is a clear legislative intent to make a change." *Witte,* 369 Md. at 533, 801 A.2d at 169.

## B.

### The Health Care Malpractice Claims Statute

 Before beginning our analysis, we provide some basic background information about the Health Care Malpractice Claims Statute and the medical malpractice claims process. The General Assembly enacted the Statute in 1976 "[for] the purpose of providing ... a mandatory arbitration system for all medical malpractice claims ... [and] the creation of a Health Claims Arbitration Office under the Executive Department...." 1976 Md. Laws, Chap. 235. Essentially, the Statute requires the submission of certain medical malpractice claims [7] to an arbitration panel for an initial assessment before

---

**6.** This maxim is "[a] canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative." BLACK'S LAW DICTIONARY 620 (8th ed.1999).

**7.** The Statute requires claims against health care providers, first, to be submitted to arbitration if the potential claim exceeds the limit of the District Court's concurrent jurisdiction, which is currently $25,000. § 3–2A–02(a).

the matter can be submitted to a court of law for a final determination. *See generally Edward W. McCready Mem'l Hosp. v. Hauser*, 330 Md. 497, 624 A.2d 1249 (1993); *Newman v. Reilly*, 314 Md. 364, 377, 550 A.2d 959, 965–66 (1988). The arbitration panel is either a three-person panel consisting of an attorney, a health care provider and a lay person, or, upon agreement of the parties, an arbitrator, in place of the three-person panel. §§ 3–2A–03(c), 3–2A–04(f); *see also Witte*, 369 Md. at 527, 801 A.2d at 166. The parties can choose to waive the arbitration requirement and take the case to court, as they did here. § 3–2A–06A. As we articulated in *Edward W. McCready Mem'l Hosp.*, 330 Md. at 500–01, 624 A.2d at 1251:

[T]he General Assembly enacted the [Statute] in response to explosive growth in medical malpractice claims and the resulting effect on health care providers' ability to obtain malpractice insurance. 1976 Md. Laws, Chap. 235; *see generally* K. Quinn, *The Health Care Malpractice Claims Statute: Maryland's Response to the Medical Malpractice Crisis*, 10 U. Balt. L.Rev. 74 (1980) (describing evolution of Statute and assessing its early effectiveness). "The general thrust of the Act is that medical malpractice claims be submitted to arbitration as a precondition to court action" where the potential claim exceeds the district court's concurrent jurisdiction. *Attorney General v. Johnson*, 282 Md. 274, 278–79, 385 A.2d 57, 60 (1978); *see also Oxtoby v. McGowan*, 294 Md. 83, 91, 447 A.2d 860, 865 (1982); Md. Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, § 3–2A–02(a). The basic procedures for initiating and maintaining a claim under the Statute are clear and simple. The Statute requires that a person with a medical malpractice claim first file that claim with the Director of the [Health Care Office]. § 3–2A–04(a). Thereafter, the plaintiff must file a certificate of qualified expert . . . attesting to a defendant's departure from the relevant standards of care which proximately caused the plaintiff's injury. § 3–2A–04(b)(1)(i). In general, the Statute mandates that the [Health Care Office] dismiss, without prejudice, any claim where the plaintiff fails to file an expert's certificate

within 90 days, § 3–2A–04(b)(1)(i), unless the plaintiff obtains one of three statutory extensions of the time to file an expert's certificate: § 3–2A–04(b)(5), § 3–2A–05(j), and § 3–2A–04(b)(1)(ii).[8]

In addition to filing a certificate of qualified expert, the Statute also requires that the medical malpractice claimant file an attesting expert report.[9]

---

**8.** Section 3–2A–04(b)(5) states that "[a]n extension of the time allowed for filing a certificate of a qualified expert under this subsection shall be granted for good cause shown." Section 3–2A–05(j) provides that "[e]xcept for time limitations pertaining to the filing of a claim or response, the Director or the panel chairman, for good cause shown, may lengthen or shorten the time limitations prescribed in subsections (b) and (g) of this section and § 3–2A–04 of this article." Subsections (b) and (g) outline the time limits for discovery and delivery of awards, respectively. Lastly, § 3–2A–04(b)(1)(ii) states that,

[i]n lieu of dismissing the claim or action, the panel chairman or the court shall grant an extension of no more than 90 days for filing the certificate required by this paragraph, if:

1. The limitations period applicable to the claim or action has expired; and

2. The failure to file the certificate was neither willful nor the result of gross negligence.

We have interpreted this last provision to require that a medical malpractice claimant file a completed certificate, if the panel chairman or court grants him or her an extension, within 180 days from the initial filing of the claim with the HCAO. *Edward W. McCready Mem'l Hosp.*, 330 Md. at 513, 624 A.2d at 1256–57. In the present case, Respondent did not request an extension from the panel chairman or the court for good cause shown, as § 3–2A–05(j) proscribes, nor did he request an extension after the limitations period had expired on the grounds that his failure to file the certificate was neither willful nor the result of gross negligence, in accordance with § 3–2A–04(b)(1)(ii). Respondent did not file an attesting expert report within 180 days of the initial filing of his claim because he filed his claim with the HCAO on August 27, 2003 and did not file the attesting expert report until October 29, 2004. On that date, Respondent filed in the Circuit Court, among other things, a response to Petitioners' motion to strike the certificate of qualified expert, with an attesting expert report from Dr. Elmore attached. Because Respondent waited fourteen months, from the date of his initial claim, to file the attesting expert report, he failed to file a completed certificate of qualified expert within 90 days of filing his initial claim with the HCAO and failed to request an extension under any of the applicable provisions, such that his completion of the certificate of qualified expert was not timely.

**9.** *Odyniec v. Schneider*, 322 Md. 520, 531–35, 588 A.2d 786, 792–93 (1991), provides a more in-depth discussion of the medical malpractice

We focus our attention on the language of the Statute and apply the principles of statutory construction to discern the Legislature's intended sanction for those situations in which a medical malpractice claimant fails to attach the attesting expert report to the certificate of qualified expert. Respondent argues that the Statute is ambiguous and must be construed strictly because it is in derogation of the common law. Petitioners concede that the Statute is in derogation of the common law but counter that "the principle of a strict construction must bend in this instance" because "the legislative purpose in this case is clear."

We acknowledge that, at common law, prior to the General Assembly's enactment of the Health Care Malpractice Claims Statute, a claimant was not required to file a certificate of qualified expert in a medical malpractice case. In that sense, the certification requirement, added to § 3–2A–04(b)(1)(i)1. of the Health Care Malpractice Claims Statute in 1986, is in derogation of the common law, as both parties suggest. Nonetheless, we agree with Petitioners that the principle of strict construction must bend in this instance because the statutory language is clear and evidences the Legislature's intent to change the common law. *Marriott Employees Fed. Credit Union,* 346 Md. at 445, 697 A.2d at 458; *see Jones,* 336 Md. at 261, 647 A.2d at 1206–07. As we stated *supra,* "[m]ost statutes, of course, change the common law, so that principle necessarily bends when there is a clear legislative intent to make a change." *Witte,* 369 Md. at 533, 801 A.2d at 169. Therefore, we need not look beyond the Statute's plain language.

Section 3–2A–04(b)(1)(i)1. states that a claim "shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint."

---

claims procedure.

We see no ambiguity in the language of this provision. The General Assembly, when it enacted this provision, clearly intended for claims to be dismissed if the claimant failed to file the certificate of qualified expert within 90 days of filing the complaint. We stated, in *Edward W. McCready Mem'l Hosp.*, that the Statute "mandates that claimants arbitrate their claims before the [Health Care Office] as a condition precedent to maintaining a suit in a circuit court. The Statute defines the procedure under which such claims must be arbitrated. A claimant's filing of an expert's certificate is an indispensable step in the [Health Care Office] arbitration process." 330 Md. at 512, 624 A.2d at 1257. In accordance with our analysis in that case, and the clear language of the statute, we hold that the Statute clearly mandates dismissal, without prejudice, of a medical malpractice claim in which a claimant fails to file the required certificate of qualified expert within 90 days of filing the complaint.

Respondent argues, and the Court of Special Appeals agreed, that while the Statute clearly mandates dismissal for failing to file the certificate within 90 days of the filing of the complaint, it fails to impose such a penalty for failure to attach an attesting expert report. They contend that the maxim *expressio unius est exclusion alterius* is dispositive; that because the Legislature mentioned mandatory dismissal in subsection (b)(1)(i) and not in subsection (b)(3), it intended for mandatory dismissal only when a claimant fails to file the certificate, and not when he or she fails to attach the expert report. The Petitioners disagree and contend that because the Statute requires the attachment of the expert report to the certificate of qualified expert, the attachment represents a mandatory step in the certificate filing process, without which the certificate is incomplete, and the complaint must therefore be dismissed. We have said that

[i]n dealing with statutory commands, including time provisions, courts often speak in terms of whether they are "mandatory" or merely "directory." The suggestion implicit from such an analysis is that, if the command is "mandatory," some fairly drastic sanction must be imposed upon a

finding of noncompliance, whereas if the command is "directory," noncompliance will result in some lesser penalty, or perhaps no penalty at all. That, indeed, is really the issue. *Woodfield v. West River Improvement Ass'n,* 395 Md. 377, 910 A.2d 452 (slip op. at 13) (2006) (quoting *Tucker v. State,* 89 Md.App. 295, 297–98, 598 A.2d 479, 481 (1991)).

Again, we agree with Petitioners and hold that the General Assembly intended for the certificate of qualified expert to consist of both the certificate and the attesting expert report, rendering incomplete, and therefore insufficient, a certificate of qualified expert filed without the report attached. We reject the contention of Respondent and the intermediate appellate court, that the maxim controls, as we have cautioned that

the maxim "expressio unius est exclusio alterius" . . . meaning that the expression of one thing implies the exclusion of another thing not mentioned, is not a rule of law, but merely an auxiliary rule of statutory construction applied to assist in determining the intention of the Legislature where such intention is not manifest from the language used. It should be used with caution, and should never be applied to override the manifest intention of the Legislature or a provision of the Constitution . . . .

*Hylton v. Mayor and City Council of Balt.,* 268 Md. 266, 282, 300 A.2d 656, 664 (1972) (quoting *Kirkwood v. Provident Savings Bank of Balt.,* 205 Md. 48, 55, 106 A.2d 103, 107 (1954)). Section 3–2A–04(b)(3)(i), provides that "[t]he attorney representing each party, or the party proceeding pro se, *shall* file the appropriate certificate with a report of the attesting expert *attached* " (emphasis added). Because the plain language of § 3–2A–04(b)(3)(i) is clear, there exists no need to adhere to this maxim or evaluate other sources. It is the Legislature's use of the words "shall" and "attach" that are dispositive, and demonstrate that the Legislature intended that the certificate of qualified expert consist of both the certificate and the attesting expert report. Black's Law Dictionary defines "attach" as "[t]o annex, bind or fasten,"

BLACK'S LAW DICTIONARY 136 (8th ed.1999), making clear that the General Assembly intended for the attesting expert report to be a part of the certificate of qualified expert and not for the report and certificate to constitute two separate and distinct documents. There exists no ambiguity as to the meaning of the word "attach."

The term "shall" is also unambiguous. It remains a well-settled principle of this Court that "[w]hen a legislative body commands that something be done, using words such as 'shall' or 'must,' rather than 'may' or 'should,' we must assume, absent some evidence to the contrary, that it was serious and that it meant for the thing to be done in the manner it directed." *Thanos v. State*, 332 Md. 511, 522, 632 A.2d 768, 773 (1993) (quoting *Tucker v. State*, 89 Md.App. 295, 298, 598 A.2d 479 (1991)); *Mayor of Oakland*, 392 Md. at 328, 896 A.2d at 1052; *Gorge v. State*, 386 Md. 600, 613, 873 A.2d 1171, 1179 (2005); *See also State v. Green*, 367 Md. 61, 82, 785 A.2d 1275, 1287 (2001) (determining that the statute's use of the word "shall" rendered its sentencing provisions "unambiguously mandatory"). We have even promulgated this principle into Maryland Rule 1–201(a), which provides that "[w]hen a rule, by the word 'shall' or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute." [10] In this case, we find no evidence to suggest that the Legislature intended for the attachment to be suggestive and hold, accordingly, based on the Legislature's chosen language, that a certificate of qualified expert must have an attached attesting expert report in order to complete the certification. Finding guidance in these prior opinions, we are confident that the Legislature did not intend this attachment as a mere suggestion as Respondent asserts, but rather that the Legislature intended to mandate the attachment of an expert report to render complete the certificate of qualified expert.

---

10. *See also* Maryland Rule 6–104(a) espousing the same principle, to all matters in the orphans' courts and before the registers of wills relating to the settlement of the decedents' estates.

Because the language of the Statute is clear and its meaning unambiguous, we need not, and should not, look beyond the Statute. *Jones v. State,* 336 Md. at 261, 647 A.2d at 1206–07. Even if Respondent is correct that the language of the Statute is ambiguous, we remain convinced that the Legislature intended a mandatory sanction of dismissal when a claimant fails to attach the expert report, based on the context of the Statute and its stated purpose.

For purposes of finishing the analysis, we will evaluate the language of the Statute with regards to the context in which it appears. *Pagano,* 341 Md. at 133, 669 A.2d at 1341. That the applicable subsection, § 3–2A–04(b), is entitled *"Filing and service of certificate of qualified expert,"* implies further that the General Assembly intended the word "certificate" to include both the certificate of qualified expert and the attesting expert report, and not just the certification. Had the General Assembly intended for the certificate and report to stand apart from each other, it certainly could have included a separate section that contained the word "report" in the title, instead of listing the report requirement under the section entitled *"Filing and service of certificate of qualified expert."* Instead, the Legislature designated the "certificate" section, section (b), and then listed the "report" requirements under section (b), as subsection (3)(i) of that section.[11] The Legislature did not write the Statute in such a way as to list the certificate requirements in section (b) and the report requirements in section (c), which we believe is additional evidence of

---

11. (b) *Filing and service of certificate of qualified expert.*—Unless the sole issue in the claim is lack of informed consent:

(1)(i) 1. Except as provided in subparagraph (ii) of this paragraph, a claim or action filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint;

\* \* \*

(3)(i) The attorney representing each party, or the party proceeding pro se, *shall file the appropriate certificate with a report of the attesting expert attached.*

(Emphasis added.)

the legislative intent that the certificate of qualified expert consist of both the certificate and the attesting expert report.

Because the Legislature mandated that the expert report be attached to the certificate of qualified expert, we reject Respondent's argument that the mandatory dismissal applies only to situations in which a claimant fails to file a certificate, and not to instances where a claimant files a certificate but fails to attach the report. We see no reason to differentiate these two situations. In as much as the expert report must be attached to the certificate, it is part of the certificate. As we stated above, the certificate of qualified expert is an "indispensable step" in the arbitration process. *Edward W. McCready Mem'l Hosp.*, 330 Md. at 512, 624 A.2d at 1257. While based on somewhat different facts,[12] we agree with the Court of Special Appeals' general statement in *D'Angelo v. St. Agnes Healthcare Inc.*, 157 Md.App. 631, 645, 853 A.2d 813, 822, *cert. den'd* 384 Md. 158, 862 A.2d 993 (2004), that "failure to file a proper certificate is tantamount to not having filed a certificate at all."

Furthermore, the General Assembly enacted the Statute for purposes of weeding out non-meritorious claims and to reduce the costs of litigation. While it is arguably unclear from the Statute exactly what the expert report should contain, common sense dictates that the Legislature would not require two

---

**12.** In *D'Angelo v. St. Agnes Healthcare Inc.*, 157 Md.App. 631, 853 A.2d 813, *cert. den'd* 384 Md. 158, 862 A.2d 993 (2004), the Court of Special Appeals examined whether a certificate of qualified expert fulfilled the requirements of § 3–2A–04(b). Like in this case, the certificates in *D'Angelo* did not have attesting expert reports attached. The main focus of the case, however, was whether the certificates were complete despite that the certificates failed to mention that "any of the thirty-one defendants either departed from the standard of care or that the departure from the standard of care by any of the defendants was the proximate cause of the injuries alleged." 157 Md.App. at 635, 853 A.2d at 816. That the certificates did not have reports attached was an additional issue that exacerbated the deficiency of the certificates, but did not constitute the basis for the court's analysis. The Court of Special Appeals held that because the plaintiff failed to fulfill the requirements of the Health Care Malpractice Claims Statute, the motions judge was correct to dismiss the claims. 157 Md.App. at 652, 853 A.2d at 826.

documents that assert the same information. Furthermore, it is clear from the language of the Statute that the certificate required of the plaintiff is merely an assertion that the physician failed to meet the standard of care and that such failure was the proximate cause of the patient-plaintiff's complaints. The certificate required of the defendant is simply that the defendant either did meet the required standard of care or, if not, that the failure was not the proximate cause of the plaintiff's injury. It therefore follows that the attesting expert report must explain how or why the physician failed or did not fail to meet the standard of care and include some details supporting the certificate of qualified expert. Of additional support is that the ordinary meaning of "report" is "[a] detailed account," WEBSTER'S II NEW COLLEGE DICTIONARY 962 (3rd ed.2005), and its ordinary legal definition is "[a] formal oral or written presentation of facts or a recommendation for action." BLACK'S LAW DICTIONARY 1326 (8th ed.1999). Accordingly, the expert report should contain at least some additional information and should supplement the Certificate. Requiring an attesting expert to provide details, explaining how or why the defendant doctor allegedly departed from the standards of care, will help weed out non-meritorious claims and assist the plaintiff or defendant in evaluating the merit of the health claim or defense, depending on the circumstances.

Respondent argues that the expert report is not necessary because § 3–2A–04(b)(3)(ii) states that "[d]iscovery is available as to the basis of the certificate." Petitioners counter that "[h]aving this information early in the litigation would foster the efficient and expeditious retention of defense experts and conduct of discovery. The information contained in an expert's report may also impact a defendant's decision to waive arbitration, or may foster early settlement discussions." Even if Petitioners could have conducted discovery in lieu of Respondent's filing of an attesting expert report, that fact does not modify the clear legislative policy of weeding out non-meritorious claims and reducing the cost of litigation. Filing a meritorious, complete certificate of qualified expert, bearing the attesting expert's report, fosters the legislative policy

referenced above, whereas filing an incomplete certificate, without the expert's report, detracts from that legislative policy. We therefore adopt Petitioners' propositions that requiring an expert to file a combination of a certificate of merit and an attesting report, will help further the Legislature's purpose, uphold the meaning and intention of the Legislature, and aid the efficient processing of health claims. *See Edward W. McCready Mem'l Hosp.*, 330 Md. at 511, 624 A.2d at 1256 (concluding that the Legislature intended for the Health Care Malpractice Claims Statute to "assur[e] the prompt and efficient arbitration of health claims").

Lastly, the Court of Special Appeals concluded that mandatory dismissal as a sanction was too harsh and could be imposed, if at all, only in cases where the opposing party was prejudiced by the lack of an attesting expert report. We do not agree with the Court of Special Appeals' standard for application of the Statute's sanction. It is not the task of the Judiciary to re-write the Statute and devise a statutory procedure for the imposition of a statutory remedy. Even if the legislatively-imposed sanction were harsh, it is not for the courts to read into the Statute the element of prejudice. " 'We cannot assume authority to read into the [Statute] what the Legislature apparently deliberately left out. Judicial construction should only be resorted to when an ambiguity exists. Therefore, the strongly preferred norm of statutory interpretation is to effectuate the plain language of the statutory text.' " *Chow*, 393 Md. at 444, 903 A.2d at 395 (citations omitted).

Moreover, we do not believe that the sanction is too harsh because the requirements of the filing process are clear, and, in cases where the claimants fail to adhere to the Statute, the claim will be dismissed without prejudice, allowing claimants, subject to the statute of limitations or other applicable defenses, an opportunity to begin the process anew. Furthermore, we have stated previously that we will dismiss actions when a party fails to follow a statutorily prescribed procedure:

While an arbitration panel operating under the Act is not an administrative agency, the legislative mandate that the arbitration procedure under the Act be followed as a precondition to invoking the general jurisdiction of a court is analogous to the doctrine of exhaustion of administrative remedies. Where the General Assembly has provided a special form of remedy and has established a statutory procedure before an administrative agency for a special kind of case, a litigant must ordinarily pursue that form of remedy and not bypass the administrative official. So strong is this public policy that this Court will, *sua sponte*, vacate judgment and order an action dismissed where the litigants have not followed the special statutory procedure.

*Oxtoby*, 294 Md. at 91, 447 A.2d at 865 (citations omitted). Furthermore, there is no language in the statute to suggest that a case should be dismissed only upon a showing of prejudice to a party. The court's charge in interpreting a statute is to determine the intent of the Legislature, not to insert language to change the meaning of a statute. *Taylor*, 365 Md. at 181, 776 A.2d at 654. Based on the clear and ordinary meaning of the language in the Statute, we hold that the attesting expert report must be attached to the certificate and that the certificate of qualified expert is not complete unless, and until, the expert report is filed as an attachment thereto.

## CONCLUSION

We conclude that the trial court's interpretation of § 3–2A–04(b) was correct and therefore reverse the judgment of the Court of Special Appeals. Because Respondent failed to attach the expert report to the certificate of qualified expert in a timely manner, the trial court was required to dismiss Respondent's medical malpractice claim. Based on the plain language of the statute, it is clear that the General Assembly intended that the attesting expert report be a part of the certificate. Without an attesting expert report, a certificate of qualified expert is incomplete.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY. RESPONDENT TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.