REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0782

September Term, 2013

_____

PHILIP POWELL, PERSONAL
REPRESENTATIVE OF THE ESTATE OF
BEATRICE C. POWELL

v.

ALEX WURM

_____

Krauser, C.J.,
Berger,
Sharer, J. Frederick
    (Retired, Specially Assigned),

JJ.

_____

Opinion by Krauser, C.J.

_____

Filed:  January 29, 2015

The Maryland Health Care Malpractice Claims Act requires a "claimant or plaintiff" to file, with his or her medical malpractice "claim or action," "a certificate of a qualified expert" and a "report" from that expert. Md. Code Cts. & Jud. Proc. § 3-2A-04(b)(1)(i), (3)(i) (1974, 2013 Repl. Vol.) ("CJP"). Philip Powell, in his capacity as the personal representative of the Estate of Beatrice Powell, appellant, filed, in the Circuit Court for Prince George's County, a medical malpractice action against Alex Wurm, M.D., appellee. With that action he also filed, as directed by the foregoing section of the Maryland Code, both a certificate of qualified expert and the report of the Estate's medical expert.

The principal question before us[1] is whether the report of the Estate's expert satisfied Maryland law. The circuit court believed that it did not and dismissed the Estate's action. We disagree and shall reverse and remand this case for trial.

## I.

On August 5, 2009, Dr. Wurm, a radiologist,[2] performed an "inferior [vena] cava filter placement" procedure on the now-deceased Mrs. Beatrice Powell to treat her chronic pulmonary emboli.[3] This surgical procedure involves the insertion of a "filter" into the

---

[1] The Estate also contends that the Prince George's County circuit court erred in failing to grant it an extension of time, "for good cause shown," so that it could supplement its expert report. Because our resolution of the Estate's first and principal contention is dispositive of this appeal, we need not address this claim.

[2] A radiologist is a "physician trained in the diagnostic and/or therapeutic use of x-rays . . . diagnostic ultrasound and magnetic resonance imaging and applicable physics." *Stedman's Medical Dictionary* (28th ed. 2006) 1624.

[3] A "pulmonary embolism" is the "obstruction of pulmonary arteries, usually by detached fragments of a clot from a leg or pelvic vein." *Stedman's Medical Dictionary* (2001) 691.

1

"inferior vena cava," a "vein formed by the union of the two common iliac veins" and which "empties into the right atrium of the heart." *Stedman's Medical Dictionary* (2001) 414.

During Dr. Wurm's performance of that procedure, the filter "perforated the wall" of Mrs. Powell's inferior vena cava and, as a result of that perforation, the filter was deposited, not in the inferior vena cava as intended, but in "an extravascular location." Consequently, Mrs. Powell had to subsequently undergo additional surgery to remove the filter and repair the damage to her inferior vena cava.[4] Although Mrs. Powell died a year later, it is not alleged that her death was a consequence of the procedure performed by Dr. Wurm.

On August 2, 2012, three years after the filter placement procedure in question and two years after Mrs. Powell's death, the Estate filed a medical malpractice claim, with the Health Care Alternative Dispute Resolution Office, against Dr. Wurm, alleging that the doctor had failed to "exercise appropriate care and technique" during the filter placement procedure. That failure led, claimed the Powell Estate, to a piercing of the wall of the inferior vena cava and to the subsequent misplacement of the filter. In accordance with section 3-2A-04(b) of the Health Care Malpractice Claims Act, the Estate filed with its malpractice claim a "certificate of qualified expert," signed by Robert Vogelzang, M.D., a radiologist, together with Dr. Vogelzang's report.

---

[4] It is not clear, from the record, whether a new filter was placed in Mrs. Powell's inferior vena cava during this subsequent surgery.

Then, after waiving arbitration of its claim, the Estate filed a medical malpractice complaint against Dr. Wurm in the Prince George's County circuit court. With its complaint, the Estate filed the certificate of qualified expert and the report from Dr. Vogelzang. The certificate stated that it was Dr. Vogelzang's opinion, "to a reasonable degree of medical probability," that Dr. Wurm, in performing the inferior vena cava filter placement, departed "from the standards of care in connection with such medical procedure" and that that "departure from the standards of care [was] the proximate cause of [Mrs. Powell's] injuries." The "specific departures from the standard of care are set forth," indicated the certificate, "in the attached report."

In that report, Dr. Vogelzang stated:

> In my opinion, Dr. Wurm violated the applicable standards of care in the placement of an inferior vena cava filter in that he failed to exercise appropriate care and technique and thereby perforated the wall of the inferior vena cava and deposited the filter in an extravascular location, thus necessitating the subsequent surgery to remove the filter and repair the caval laceration.

Dr. Wurm moved to dismiss the Estate's malpractice action on the grounds that the Estate's medical expert report was legally insufficient. In support of that claim, Dr. Wurm cited the following language from *Walzer v. Osborne*: "[T]he attesting expert report must explain how or why the physician failed . . . to meet the standard of care and include some details supporting the certificate of qualified expert." 395 Md. 563, 583 (2006). Since Dr. Vogelzang's report, purportedly, "merely restate[d]" the allegations in his certificate and provided no additional details, the Estate's expert report, insisted Dr. Wurm, was inadequate and the Estate's malpractice claim must therefore be dismissed.

3

In its opposition to that motion, the Estate asserted that there was "no dispute that Dr. Wurm perforated" Mrs. Powell's inferior vena cava and that discovery would be necessary to determine precisely which of Dr. Wurm's actions or inactions had led to that perforation. To that opposition, it attached a "revised opinion letter" from Dr. Vogelzang, in which Dr. Vogelzang opined that Dr. Wurm had "failed to meet the standard of care" for placing an inferior vena cava filter by neglecting to use a "guidewire," or using an "improper guidewire," or by not injecting "contrast" to confirm the position of the filter.

This revised opinion letter, however, was submitted to the court after the statutory period for filing a certificate of qualified expert with the attesting expert report attached had expired. *See* CJP § 3-2A-04(b)(1)(i)–(ii) (requiring a plaintiff to file a certificate of qualified expert within 180 days from the date the complaint is filed in the Health Care Alternative Dispute Resolution Office). Acknowledging the lateness of this submission, the Estate requested that the circuit court grant it "an extension of time," for "good cause shown," to file its "certificate of a qualified expert," under section 3-2A-04(b)(5) of the Act, so that it could supplement Dr. Vogelzang's original report.[5]

With no mention of that revised opinion letter or its contents in its written opinion, the circuit court dismissed the action, concluding that, because Dr. Vogelzang's report did not state "how" or "why" Dr. Wurm failed to meet the standard of care and did not contain any "supplemental information" or "details to support the certificate," it had "fail[ed] to

---

[5] The request for an extension of time for "good cause shown" contained no explanation as to the nature of the "good cause" that purportedly excused the Estate's belated submission of this letter.

4

comply with the substantive requirements of *Walzer*," and was therefore "legally insufficient." The insufficiency of the report, in turn, rendered the certificate of qualified expert "incomplete."

## II.

The Estate contends that its certificate of qualified expert and the attached report complied with the requirements set forth in the Health Care Malpractice Claims Act. It points out that the Act does not mandate the contents of the report, but requires only that the report of the attesting expert be attached to the certificate of qualified expert. It further asserts that decisions of the Court of Appeals—notably, *Walzer v. Osborne*, 395 Md. 563 (2006); *Carroll v. Konits*, 400 Md. 167 (2007); and *Kearney v. Berger*, 416 Md. 628 (2010)—have consistently suggested that the attesting expert's report need only contain "at least some additional information" that "supplement[s]" the certificate to satisfy statutory requirements. *Walzer*, 395 Md. at 583. Finally, it states that Dr. Vogelzang's report, which opined that Dr. Wurm had perforated Mrs. Powell's inferior vena cava by failing to exercise appropriate care and technique, had done exactly that.

Because our determination of whether the Estate's certificate of its qualified expert and report of its attesting expert complied with Maryland law is a question of legal sufficiency, we conduct a de novo review, keeping in mind that the dismissal of a medical malpractice claim "is only appropriate if, after assuming the truth of the assertions in the [c]ertificate and report, and all permissible inferences emanating therefrom, the requirements set forth in the [Act] are not satisfied." *Carroll*, 400 Md. at 180 n.11.

5

Our review begins with the text of section 3-2A-04(b) of the Act, and if the words of that section, when "construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Walzer*, 395 Md. at 572 (internal quotation marks and citation omitted). In requiring that a medical malpractice claimant file a "certificate of qualified expert" with his or her claim, the Act states:

> (b) Filing and service of certificate of qualified expert—Unless the sole issue in the claim is lack of informed consent:
>
> > (1)(i) 1 . . . a claim or action filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a certificate of a qualified expert . . . attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint; . . . .
>
> > \* \* \*
>
> > (3)(i) The attorney representing each party, or the party proceeding pro se, shall file the appropriate certificate with a report of the attesting expert attached.

The Act clearly specifies what the "certificate of a qualified expert" must attest to. It must state that there was a "departure from standards of care, and that the departure from standards of care [was] the proximate cause of the [plaintiff's] alleged injury." CJP § 3-2A-04(b)(1)(i). And it must "mention explicitly the name of the licensed professional who allegedly breached the standard of care." *Carroll*, 400 Md. at 196 (internal citations omitted). But, as for the "report of the attesting expert," the Act only mandates that such a report be "attached" to the certificate. CJP § 3-2A-04(b)(3)(1). No mention is made by the Act as to what it should contain.

6

There is no dispute that Dr. Vogelzang's certificate opined that "there was a departure from the standards of care," that it stated that such a departure was the proximate cause of Mrs. Powell's injuries, and that it identified Dr. Wurm as the negligent physician. Moreover, the doctor's report was attached to his certificate. Thus the only question before us is whether Dr. Vogelzang's report satisfied the requirements of the Act, in other words, whether the circuit court was correct in dismissing this case on the grounds that the report was legally deficient.

As noted, the language of the Act itself states only that the report must be "attached" to the certificate of the plaintiff's qualified expert. It does not provide any indication of what the "report of the attesting expert" must contain. But the imprecision of the report requirement of the Act has fortunately been, in large measure, remedied by the Court of Appeals in a series of opinions.

First, in *Walzer v. Osborne*, 395 Md. 563, 583 (2006), the Court of Appeals avowed that "the certificate required of the plaintiff is merely an assertion that the physician failed to meet the standard of care and that such failure was the proximate cause of the patient-plaintiff's complaints," and that the attesting expert report "should contain at least some additional information and should supplement" the certificate. Specifically, the "expert report must explain," said the Court, "how or why the physician failed or did not fail to meet the standard of care and include some details supporting the certificate of qualified expert." *Id*. Then, in *Carroll v. Konits*, 400 Md. 167 (2007), and *Kearney v. Berger*, 416 Md. 628 (2010), the Court of Appeals, in addressing the legal sufficiency of a plaintiff's "certificate" in each of those cases, reiterated that the report of the attesting expert should

7

state what the applicable standard of care is and how the defendant physician had departed from it. *Carroll*, 400 Md. at 197; *Kearney*, 416 Md. at 649–50.

Thus it is clear from the foregoing decisions that the report of an attesting expert must state what the applicable standard of care is and provide some information as to how or why the defendant physician had not met that standard. Therefore, Dr. Vogelzang's report, which was attached to the doctor's "certificate" and filed by the Estate with its malpractice claim, must be deemed compliant with the requirements of the Act if it contained "at least some additional information" and provided details "explaining how or why the defendant doctor allegedly departed from the standards of care." *Walzer*, 395 Md. at 583.

In our view, Dr. Vogelzang's report did just that. First, it specified that the "applicable standards of care" that Dr. Wurm allegedly violated were the "standards of care in the placement of an inferior vena cava filter" and then asserted that that standard of care was violated by the doctor's failure to "exercise appropriate care and technique." Next, it stated that, as a consequence of his failure to "exercise appropriate care and technique," Dr. Wurm perforated the wall of Mrs. Powell's inferior vena cava and deposited the filter in an "extravascular location, thus necessitating . . . subsequent surgery to remove the filter and repair the caval laceration."

In light of this additional information, which was not contained in Dr. Vogelzang's certificate, we do not find that the doctor's report merely "duplicates" his certificate, as Dr. Wurm suggests. Indeed, the report stated the precise nature of the medical procedure that Dr. Wurm was performing when he purportedly breached the standard of care; the specific

8

error that was committed, that is, the misplacement of the inferior vena cava filter; the injury that resulted, that is, the perforation of the inferior vena cava; and the future medical procedure that was necessary to address that injury. In so stating, Dr. Vogelzang's report supplemented his certificate by providing additional information regarding both the applicable standard of care and how Dr. Wurm allegedly departed from it in his treatment of Mrs. Powell. Hence we conclude that the report was legally sufficient and that the circuit court erred in dismissing the Estate's claim on the basis of an insufficient certificate of qualified expert.

**III.**

But, even if we were to find that Dr. Vogelzang's report, by itself, was not legally sufficient, we could still consider the doctor's certificate and report together to determine whether both documents, collectively, satisfied the requirements of the Act. Indeed, the Court of Appeals has suggested on several occasions that the certificate and the report should be viewed together. First, and most clearly, Maryland's highest court observed in *Walzer* that the certificate of qualified expert and the report of the attesting expert were not "intended . . . to constitute two separate and distinct documents." 395 Md. at 580. Rather, it was the intention of the General Assembly "for the certificate of qualified expert to consist of both the certificate and the attesting expert report." *Id.* at 579.

Next, in *Carroll*, the Court of Appeals was asked to consider whether the single document filed with the plaintiff's complaint in that case complied with the requirements of the Act. 400 Md. at 171–73. The "document" at issue, there, was a letter from the plaintiff's medical expert summarizing the medical treatment the plaintiff had received and

9

offering several opinions regarding medical errors that might have been made. *Id.* at 173–74. Ultimately, the Court found the letter or, as it described it, the "Certificate," to be insufficient for two reasons: First, the "Certificate" failed to identify the defendant physicians, state that the defendants departed from the standards of care, and assert that such a departure was the proximate cause of the plaintiff's injury. *Id.* at 201. Second, and "[e]qually egregious," it neglected to state what the standard of care was or how the defendant physicians had departed from it. *Id.* at 197. In short, the "Certificate" did not provide the kind of information that the certificate of qualified expert and the expert's report were, together, expected to furnish. *See, e.g.*, *Walzer*, 395 Md. at 583 (stating that the certificate of qualified expert should assert "that the physician failed to meet the standard of care and that such failure was the proximate cause of the patient-plaintiff's complaints" and that the expert's report "must explain how or why the physician failed or did not fail to meet the standard of care and include some details supporting the certificate of qualified expert").

Finally, in *Kearney*, the Court of Appeals once again addressed the sufficiency of a single document filed by the plaintiff, which it referred to as a "certificate of qualified expert" or more simply as the "certificate," and it concluded that the "certificate" was insufficient, under *Walzer*, because no report of an attesting expert was attached and the certificate failed to fill in the gap by explaining how or why the defendant failed to meet the applicable standard of care. 416 Md. at 647, 650. The Court pointed out that its prior decisions in *Carroll* and *Walzer* "show that a claimant or plaintiff whose certificate fails to state the applicable standard of care and how the defendant allegedly departed from that

10

standard of care is equivalent to a failure to satisfy the report requirement and, accordingly, renders the certificate insufficient." *Id.* at 649–50. This suggests, to us, that the plaintiff in *Kearney* could have satisfied the requirements of the Act (but did not) by filing a certificate of qualified expert that contained all of the information that would otherwise have been contained in the combination of the expert certificate and report.

In sum, the Court of Appeals has made clear that the certificate and report of the plaintiff's expert, together, make up the "certificate of qualified expert" required by the Health Care Malpractice Claims Act. *Walzer*, 395 Md. at 580. Moreover, in *Carroll*, 400 Md. at 196–97, and *Kearney*, 416 Md. at 649–50, the Court examined single documents filed by the plaintiffs, in those cases, to determine whether they fulfilled the requirements of both the expert certificate and the expert report. Thus we conclude, from those foregoing decisions, that we are permitted to view the certificate of the Powell Estate's qualified expert and the report of the Estate's attesting expert together and determine whether those documents do the following: identify the defendant physician; state that the defendant breached the applicable standard of care; opine that such a departure from the standard of care was the proximate cause of the plaintiff's injuries; and provide some details as to what the standard of care was and how the defendant physician failed to meet it. Because we may consider those documents together, it would not have doomed the Estate's complaint if the report of its attesting expert, by itself, was lacking, so long as that informational insufficiency was cured by the certificate of qualified expert. Likewise, it would not prove fatal to the Estate's complaint if Dr. Vogelzang's report simply "duplicated" his certificate, as Dr. Wurm suggests, so long as the certificate itself contained all the required

11

information.  The important determination to be made would be whether the Estate's expert certificate and report, when viewed as a whole, satisfied all of the Act's requirements.

## IV.

We conclude that the Estate's report of its attesting expert, Dr. Vogelzang, satisfied the requirements of the Act by supplementing the doctor's certificate of qualified expert and providing details explaining how Dr. Wurm allegedly departed from the applicable standard of care in his performance of an inferior vena cava filter placement procedure on Mrs. Powell.  Moreover, even if we were to determine that the expert report alone was informationally insufficient, the report and the certificate together do contain sufficient information to satisfy the requirements of the Maryland Health Care Malpractice Claims Act.  In sum, either approach leads us to the same result, that is, that the Estate filed, with its medical malpractice claim, a legally sufficient expert certificate and report.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED.  CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  COSTS TO BE PAID BY APPELLEE.**

12