REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND


No. 1420

September Term, 2012

_____


LYDIA G. WILCOX, ET AL.


v.


TRISTAN J. ORELLANO

_____


Krauser, C.J.,
Wright,
White, Pamela J.
  (Specially Assigned),


JJ.

_____


Opinion by Krauser, C.J.

_____


Filed: June 24, 2014

Subsection 5-119(b) of the Courts and Judicial Proceedings Article[1] permits a party, whose medical malpractice "action or claim" has been "dismissed once . . . without prejudice," because of that party's failure to attach a report of an attesting expert to the certificate of a qualified expert, to re-file that "action or claim," so long as it is filed within 60 days from the date of dismissal, regardless of whether the statute of limitations has run. This "savings provision,"[2] however, does not apply, under the preceding subsection of section 5-119, that is, subsection 5-119(a), or the "preclusion provision," which precludes the re-filing of a claim or action under the savings provision when the dismissal of the claim or action is a "voluntary dismissal of a civil action or claim by the party who commenced the action or claim."

This appeal requires us to decide whether Lydia Wilcox, appellant, may re-file, under the "savings provision," (§ 5-119(b)) her medical malpractice action against Tristan Orellano, M.D., appellee, when her initial medical malpractice action against Dr. Orellano was dismissed by a voluntary stipulation of dismissal signed by both sides to the controversy. The Circuit Court for Prince George's County concluded that that stipulation of dismissal amounted to "a voluntary dismissal . . . by the party who commenced the action or claim"

---

[1]Md. Code, Cts. & Jud. Proc. § 5-119 (1974, 2013 Repl. Vol.). All subsequent citations to the Maryland Code in this opinion are to the Courts and Judicial Proceedings Article ("CJP") unless otherwise indicated.

[2]To avoid confusion, given that the two relevant provisions of section 5-119 we will be discussing are distinguishable by only a lower-case letter and, to make matters worse, are in what is arguably reverse order, as the exception precedes the principle in section 5-119, we have dubbed section 5-119(b) the "savings provision" and section 5-119(a) the "preclusion provision."

under the "preclusion provision" (§ 5-119(a)) and dismissed her re-filed claim. We agree and shall affirm.

## Background

Wilcox was referred to Tristan Orellano, M.D., a general surgeon, after an abnormal mammogram. A biopsy then performed by Dr. Orellano confirmed that Wilcox had breast cancer in her right breast. Wilcox thereafter elected to have a lumpectomy,[3] and Dr. Orellano performed that procedure.

During two successive post-operative visits with Dr. Orellano, Wilcox complained to the doctor of swelling, redness, and discomfort in her right breast at the site of the surgery. Nonetheless, Dr. Orellano did not prescribe, according to Wilcox, any treatment for those problems. The swelling in Wilcox's right breast persisted and, eight months after the surgery, Wilcox's oncologist determined that she had developed an infection in her right breast at the site of the lumpectomy. For the next nine months, she reported daily to a hospital to have the dressing around the infection changed. But the infection only worsened, and eventually led to the surgical removal of her right breast.

Following that surgery, Wilcox filed a claim with the Health Care Alternative Dispute Resolution Office against Dr. Orellano, together with a certificate of a qualified expert, as

---

[3] A "lumpectomy," or "tylectomy," is the "surgical removal of a tumor from the breast." *Stedman's Medical Dictionary* (2001) 476, 860.

required by section 3-2A-04(b) of the Health Care Malpractice Claims Statute.[4]

Unfortunately, she failed to attach to the certificate a report of an attesting expert, as required by the same statute, and never sought to correct that mistake.

Ultimately, Wilcox waived arbitration of her claim and filed a complaint, in the Circuit Court for Howard County, against Dr. Orellano, alleging negligence, breach of contract, and loss of consortium, based on the post-operative care and treatment she had

---

[4]Section 3-2A-04(b) of the Courts and Judicial Proceedings Article (1974, 2013 Repl. Vol.) states in part:

> (1)(I) 1. Except as provided in item (ii) of this paragraph, a claim or action filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint; . . .
>
> (ii) In lieu of dismissing the claim or action, the panel chairman or the court shall grant an extension of no more than 90 days for filing the certificate required by this paragraph, if:
>
> 1. The limitations period applicable to the claim or action has expired; and
>
> 2. The failure to file the certificate was neither willful nor the result of gross negligence.
>
> ***
>
> (3)(I) The attorney representing each party, or the party proceeding pro se, shall file the appropriate certificate with a report of the attesting expert attached.

received from him. Dr. Orellano answered that complaint and then, three months later, moved to both strike Wilcox's certificate of qualified expert and to dismiss Wilcox's complaint. Because Wilcox had never filed a report of her attesting expert, the court, claimed the doctor, was required, under *Walzer v. Osborne*,[5] to dismiss her complaint without prejudice. But, before a hearing could be held on Dr. Orellano's motion to dismiss, a stipulation of dismissal was signed by the attorneys for both sides and filed. It simply stated: "The parties, by and through their respective attorneys, pursuant to Md. Rule 2-506(a), hereby stipulate and agree to the dismissal without prejudice of this action in its entirety against [Dr. Orellano]."

Less than two weeks later, Wilcox filed another claim with the Health Care Alternative Dispute Resolution Office against Dr. Orellano. With that claim she filed both a certificate of a qualified expert and, for the first time, a report from that expert, as she was required to do by section 3-2A-04(b). After waiving arbitration again, Wilcox filed a complaint, not in the Circuit Court for Howard County (where she had filed her original complaint) but in the Circuit Court for Prince George's County. In her second complaint, she once again alleged negligence, breach of contract, and loss of consortium.[6]

---

[5]In *Walzer v. Osborne*, the Court of Appeals held, among other things, that, in a medical malpractice action, the required certificate of a qualified expert is not complete unless, and until, the report of an attesting expert is attached to the certificate. 395 Md. 563, 587 (2006). If a claimant files a certificate of a qualified expert but fails to file the expert report "in a timely manner," the claim must be dismissed without prejudice. *Id.* at 567.

[6]Although Wilcox's second complaint asserted, as did her first, that Dr. Orellano had breached the duty of care owed to her with respect to the post-operative care he provided, it

4

Dr. Orellano, in response, filed an answer and, once again, moved to dismiss, but this time he alleged as grounds for his dismissal request that Wilcox's claim was now barred by the applicable statute of limitations. After the Prince George's County circuit court denied his motion to dismiss, Dr. Orellano filed two motions for reconsideration. Although the first motion was denied without a proceeding, a hearing was held on the doctor's second motion for reconsideration.

At the conclusion of that hearing, the circuit court found that the savings provision of section 5-119 "is expressly, by its terms, limited" and that it did not apply where there has been "a voluntary dismissal of a civil action or claim" by stipulation of the parties. What Wilcox should have done "to come within the meaning of the statute," declared the court, was "to have gone to [the] hearing and had the Court dismiss [her claim]." The court therefore concluded that, having in effect "voluntarily dismissed" her action, Wilcox was not entitled to re-file her claim as that claim was now barred by the relevant statute of limitations. That decision prompted this appeal.

**Discussion**

Wilcox contends that she was permitted to file her second claim under section 5-119(b) of the Courts and Judicial Proceedings Article, the "savings provision," because her first claim was voluntarily dismissed not by "the party who commenced the

alleged, for the first time, that he had also breached the duty of care with respect to the scope of the surgical procedure he had performed.

5

action," but by a voluntary stipulation of dismissal executed by the parties. In short, she claims that the limitation imposed by the preclusion provision (§ 5-119(a)) on the savings provision (§ 5-119(b)), which precludes a "voluntary dismissal of a civil action or claim by the party who commenced the action or claim," applies only to a unilateral voluntary dismissal and not one of a bilateral nature, such as a voluntary stipulation. Dr. Orellano responds that the language of the preclusion provision (§ 5-119(a)) clearly covers a voluntary dismissal by stipulation. Nor is there any reason, he suggests, to draw a distinction between unilateral and bilateral voluntary dismissals.

Thus the task before us is to determine the proper construction to be accorded section 5-119. We begin that task by noting that the "cardinal rule" of statutory construction "is to ascertain and effectuate [the] legislative intent" in enacting the statute, *Mayor of Balt. v. Chase*, 360 Md. 121, 128 (2000), and that "[t]he primary source from which we glean this intention is the language of the statute itself," *Subsequent Injury Fund v. Herman*, 89 Md. App. 741, 747 (1992) (quoting *Mazor v. Dep't of Corr.*, 279 Md. 355, 360 (1977)). If, however, "the true legislative intent cannot readily be determined from the statutory language alone," we may consider other "recognized indicia" of legislative purpose, including "how the statute relates to other laws; [and] the legislative history, including the derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process, and amendments proposed or added to it." *Witte v. Azarian*, 369 Md. 518, 525–26 (2002).

Section 5-119 states:

**Civil actions or claims dismissed for failure to file report:**

(a)(1) This section does not apply to a voluntary dismissal of a civil action or claim by the party who commenced the action or claim.

(2) This section applies only to a civil action or claim that is dismissed once for failure to file a report in accordance with § 3-2A-04(b)(3) of this article.

**Commencement of new civil action or claim:**

(b) If a civil action or claim is commenced by a party within the applicable period of limitations and is dismissed without prejudice, the party may commence a new civil action or claim for the same cause against the same party or parties on or before the later of:

> (1) The expiration of the applicable period of limitations;
>
> (2) 60 days from the date of the dismissal; or
>
> (3) August 1, 2007, if the action or claim was dismissed on or after November 17, 2006, but before June 1, 2007.

In sum, this statutory section applies only to "a civil action or claim that is dismissed once" because of the claimant's failure to attach a report of an attesting expert to the certificate of qualified expert in a medical malpractice action. If the failure to attach that report is the reason for the claim's dismissal, the savings provision (§ 5-119(b)) affords the claimant relief by permitting her to "commence a new civil action or claim for the same

7

cause against the same party" within 60 days from the date of the dismissal, even if the statute of limitations has run.

But the preclusion provision (§ 5-119(a)) places limits on this re-filing relief by rendering the statute inapplicable to a "civil action or claim" that is voluntarily dismissed "by the party who commenced the action." Contrary to Dr. Orellano's contention that the language of the statute is clear and unambiguous, we believe it is not as clear and unambiguous as the doctor suggests. Indeed, it is not altogether clear from the plain language of the statute whether a stipulation of dismissal signed by the party who commenced the action as well as the opposing party constitutes, beyond peradventure, a voluntary dismissal "by the party who commenced the action," or whether this voluntary dismissal exception to the savings provision is confined to only "unilateral" dismissals by the party who filed the action.

But that ambiguity evaporates when the preclusion provision (§ 5-119(a)) is read in conjunction with Maryland Rule 2-506, which defines a voluntary dismissal of a civil action as follows:

> (a) **By notice of dismissal or stipulation.** Except as otherwise provided in these rules or by statute, a party who has filed a complaint . . . may dismiss all or part of the claim without leave of court by filing (1) a notice of dismissal at any time before the adverse party files an answer or (2) by filing a stipulation of dismissal signed by all parties to the claim being dismissed.

8

Thus, Rule 2-506(a) plainly states[7] that a party, who has filed a claim, may voluntarily dismiss that claim in one of two ways: "unilaterally" by dismissing her claim before the adverse party files an answer or "bilaterally" by filing a stipulation of dismissal signed by all parties to the claim being dismissed.[8] That is to say, a voluntary dismissal by stipulation, under Rule 2-506(a), is a voluntary dismissal by a "party who has filed a complaint" and therefore is not entitled to the relief provided by the savings provision (§ 5-119(b)). Hence, the voluntary dismissal of Wilcox's first claim by stipulation precludes a renewal of her claim, if the statute of limitations governing that claim has run.

Nor does the legislative history of section 5-119 suggest we reach a different conclusion. When Senate Bill 309, which was ultimately codified, with changes, as "§ 5-119," was first introduced, it applied to any "civil action" that was "dismissed or terminated in a manner other than by a final judgment on the merits." It made no distinction between voluntary and involuntary dismissals, or between dismissals with prejudice or without. SB 309 (2007) (first reading).

_____

[7]To interpret rules of procedure, we "use the well-established axioms of statutory construction. When the language of the rule is clear and unambiguous, we must only look to the basic meaning of the words used. Indeed, we are 'to give effect to the entire rule, neither adding, nor deleting, words in order to give it a meaning not otherwise evident by the words actually used.'" *Milburn v. Milburn*, 142 Md. App. 518, 532 (2002) (quoting *New Jersey ex rel. Lennon v. Strazella*, 331 Md. 270, 274 (1993)).

[8]It is true that, because Dr. Orellano had filed an answer to her complaint, Wilcox could not voluntarily dismiss her claim "unilaterally," and she needed Dr. Orellano's signature on a stipulation of dismissal to dismiss her claim without a court order.

9

Several interested groups, however, voiced concerns about the proposed statute, pointing out that the plaintiff could, under the proposed statute as introduced, "simply voluntarily dismiss a complaint at any time and still be able to re-file the complaint, regardless of any limitations period;"[9] could "keep re-filing amended complaints until [the plaintiff] is able to state a viable cause of action;"[10] or could re-file even if the case "was dismissed for a just reason or because that plaintiff did not act diligently or promptly."[11] Presumably, in light of these concerns, Senate Bill 309 was subsequently amended so that the proposed statute would "not apply to a voluntary dismissal of a civil action by the party who commenced the action."[12] But there is no indication that the Legislature, with this amendment, intended to exclude from the proposed statute's purview only those claims that were voluntarily and unilaterally dismissed. Rather, by excluding voluntary dismissals "by the party who commenced the action," the amendment encompassed both ways in which a party could voluntarily dismiss, under Rule 2-506(a), her claim.

---

[9]Memorandum from Legislative Committee, Maryland Judicial Conference, to Senate Judicial Proceedings Committee (Feb. 20, 2007).

[10]Letter from Demaune Millard, Director, Baltimore City Office of Government Relations, to Members of the Senate Judicial Proceedings Committee (Mar. 6, 2007).

[11]Testimony in Opposition to Senate Bill 309, Maryland Defense Counsel, Inc. (Mar. 6, 2007).

[12]The statute was further narrowed to apply only to "a civil action or claim that is dismissed once" for the failure to file a report of an attesting expert during a later, and final, round of amendments. House Judiciary Committee Amendments to Senate Bill 309 (Third Reading File Bill), SB 309 (2007).

10

We feel compelled to acknowledge, however, that a dismissal by stipulation of all parties does not give rise to the same concerns that were raised during the drafting of what was ultimately codified as "§ 5-119." Those apprehensions, as noted earlier, focused on a claimant's total freedom to voluntarily dismiss a claim or action and then re-file it at any time and as many times as the claimant wished, until it stated a viable cause of action, regardless of whether the applicable limitations period had run. Arguably, a stipulation of dismissal, which requires the consent of both sides to a controversy, mitigates, if not eliminates, those concerns. Nonetheless, it is clear to us that when section 5-119 is read in combination with Rule 2-506 — a rule that was in existence at the time of the enactment of section 5-119[13] and therefore presumably known by those who drafted that section — section 5-119 clearly encompasses both unilateral and bilateral voluntary dismissals. And the legislative history offers nothing to indicate that that construction, which is completely consistent with the well-established axioms of statutory construction,[14] is flawed.

---

[13]Rule 2-506(a) was last amended in 2005 and has been in effect in its current form since January 1, 2006, while section 5-119 was introduced on January 31, 2007, and took effect on June 1, 2007. Moreover, a stipulation of dismissal signed by all parties to the action has been considered a voluntary dismissal by the party who filed the action since at least 1956. *See* Rule 541(a)(2) (1956) (stating that a party "without an order of court . . . may dismiss his action [or] claim . . . by filing a stipulation of dismissal signed by all parties who have appeared in the action").

[14]As we explained earlier, those axioms require us to ascertain and effectuate the Legislature's intent in enacting the statute by looking "first to the words of the statute," and then, if "the legislative intent cannot readily be determined from the statutory language alone," by considering other "recognized indicia" of legislative purpose, including "how the statute relates to other laws; [and] the legislative history, including the derivation of the statute, comments and explanations regarding it by authoritative sources during the

11

Finally, we wish to mention that, if the bald stipulation filed by the parties had contained language indicating that Wilcox would be thereafter free to re-file her claim under the savings provision (§ 5-119(b)), we would certainly feel more pressed to reach a different result, as did a New York appellate court in dealing with similar legislation. *George v. Mt. Sinai Hospital*, 390 N.E.2d 1156 (1979). There, the Court of Appeals of New York addressed the question of whether the plaintiff could re-file, under New York's "savings statute,"[15] a civil action after the parties to that action had filed a stipulation of voluntary dismissal when that statute permitted a plaintiff to commence a new civil "action" within six months after the first action was "terminated," provided that the first action was not "terminated" by "a voluntary discontinuance."[16] N.Y. C.P.L.R. 205(a) (Consol. 1999, 2014 Supp.). And, much like Maryland Rule 2-506(a), which allows "a stipulation of dismissal signed by all parties to the claim," to be a voluntary dismissal by the party, the applicable New York rule deemed "a stipulation in writing signed by the attorneys of record for all parties" to be a "voluntary discontinuance" by the "party asserting a claim." N.Y. C.P.L.R. 3217(a)(2) (Consol. 2002).

---

legislative process, and amendments proposed or added to it." *Witte v. Azarian*, 369 Md. 518, 525–26 (2002).

[15] *See*, *e.g.*, *Jones v. Brown,* 417 N.Y.S.2d 503, 504 (N.Y. App. Div. 1979).

[16] The New York savings statute also does not apply to an action that was dismissed because of a "failure of obtain personal jurisdiction over the defendant," the "neglect to prosecute the action," or "a final judgment upon the merits." N.Y. C.L.P.R. 205(a) (Consol. 1999, 2014 Supp.).

Although the action at issue was "terminated by means of a voluntary discontinuance," the New York appellate court nonetheless upheld the re-filing of that action because the stipulation of dismissal "specifically stated" that it was "without prejudice to [the] plaintiff's right . . . to commence any action pursuant to the authority" of the New York savings statute. *George*, 390 N.E.2d at 1162. After noting the expansive reading that must be given the protections provided by a remedial law, such as the statute in question, the New York court explained that the "patent purpose of this disclaimer [was] to preserve whatever rights [the] plaintiff would have had to commence a new action pursuant to the statute had the prior action been terminated by order of dismissal rather than by voluntary discontinuance." It then went on to state that it "perceive[d] no reason why this agreement between the parties should not be given its intended effect." *Id*. "Absent some violation of the law or conflict with interests of the public," the court continued, "the parties to an action have considerable freedom to waive strict compliance with procedures which might otherwise delay or preclude judicial resolution of the merits of a dispute in a particular situation." *Id*. But the New York Court of Appeals warned "where the prior action has been terminated by means of a voluntary discontinuance pursuant to a stipulation which contains no express statement of contrary intent, the statute simply does not authorize a subsequent action, regardless of the actual motives of the parties," *id.*, which is, in essence, what occurred here.

13

In any event, whether a stipulation of dismissal explicitly providing that it was without prejudice to the claimant's right to re-file the same action is not now before us and must be left for another panel of this Court to decide on another day.

**ORDER OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**