*Lydia G. Wilcox, et al., v. Tristan J. Orellano*
No. 77, 2014 Term


**Medical Malpractice Actions - Expert Certificate Requirement - Voluntary Dismissal - Limitations - Scope of Savings Provision.** As a prerequisite to prosecuting a medical malpractice action, a plaintiff must file a certificate of a qualified expert accompanied by a report of that expert; failure to file the report will result in dismissal of the action. An action dismissed for that reason may be re-filed, even if the limitations period has expired, under a statutory savings provision. The savings provision, however, does not apply in cases where there has been a voluntary dismissal by the plaintiff, including instances in which the Maryland Rules require the plaintiff to obtain the assent of the defendant to effect a voluntary dismissal.

Maryland Code, Courts & Judicial Proceedings Article, §5-119; Maryland Rule 2-506.

Circuit Court for Prince George's County
Case No. CAL10-15397
Argued: April 8, 2015

IN THE COURT OF APPEALS

OF MARYLAND

No. 77

September Term, 2014

LYDIA G. WILCOX, ET AL.,

V.

TRISTAN J. ORELLANO

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by McDonald, J.

Filed: May 28, 2015

This case concerns the consequences of a voluntary dismissal of a medical malpractice action. The initial complaint filed by the plaintiff failed to comply with a statutory prerequisite for maintaining a medical malpractice action – the attachment of an expert report concerning the alleged malpractice. That defect would result in dismissal of the complaint under the statute governing malpractice actions. The plaintiff voluntarily dismissed the action, corrected the defect, and re-filed the action. In the meantime, the statute of limitations had expired well before the filing of the second action.

A statute specific to medical malpractice actions provides some relief from the statute of limitations when an initial complaint is dismissed for the particular defect that affected the plaintiff's complaint. However, the statutory savings provision does not apply in cases in which a plaintiff has voluntarily dismissed the prior complaint.

The Maryland Rules allow a plaintiff to voluntarily dismiss a complaint by filing a simple notice of dismissal before the defendant has answered the complaint. After an answer has been filed, the plaintiff can accomplish a voluntary dismissal only by obtaining the defendant's assent or the court's permission.

This case turns on whether it makes a difference that the voluntary dismissal in this case was effected by a stipulation of dismissal, necessary because the defendant had already answered the complaint, as opposed to a notice of dismissal. We hold that it does not and that the savings provision does not apply to any case in which there has been a voluntary dismissal.

# I

## Background

### A. *Voluntary Dismissals*

For various reasons, a plaintiff in a civil action may choose to dismiss a claim – or an entire complaint – voluntarily. The process that a plaintiff must follow to do so – and the consequences of the dismissal – varies according to the stage of the proceeding and whether the plaintiff has previously dismissed the same claim, as elaborated in Maryland Rule 2-506.[1] That rule, entitled "Voluntary Dismissal," states in pertinent part:

> (a) **By notice of dismissal or stipulation.** Except as otherwise provided in these rules or by statute, a party who has filed a complaint, counterclaim, cross-claim, or third-party claim may dismiss all or part of the claim without leave of court by filing (1) a notice of dismissal at any time before the adverse party files an answer or (2) a stipulation of dismissal signed by all parties to the claim being dismissed.
>
> . . .
>
> (c) **By order of court.** Except as provided in section (a) of this Rule, a party who has filed a complaint ... may dismiss the claim only by order of court and upon such terms and conditions as the court deems proper ....
>
> (d) **Effect.** Unless otherwise specified in the notice of dismissal, stipulation, or order of court, a dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a party who has previously dismissed ... an action based on or including the same claim.

---

[1] The rule also applies to a voluntary dismissal of a counterclaim, cross-claim, or third-party claim.

According to the plain language of the rule, a plaintiff may voluntarily dismiss a complaint in one of three ways: by a notice of dismissal, by a stipulation of dismissal, or by court order. *State ex rel. Lennon v. Strazzella*, 331 Md. 270, 275-76, 627 A.2d 1055 (1993). Thus, the concept of voluntary dismissal encompasses a stipulation of dismissal after an answer has been filed. *Milburn v. Milburn*, 142 Md. App. 518, 533, 790 A.2d 744 (2002). In fact, since the predecessor of Rule 2-506 was adopted in 1956, the Maryland Rules have consistently provided that a plaintiff may accomplish a voluntary dismissal by filing a stipulation of dismissal. *See* Maryland Rule 541(a)(2) (1956) (a party may voluntarily dismiss an action by "filing a stipulation of dismissal signed by all parties who have appeared in the action").[2] This aspect of Rule 2-506 is modeled after Federal Rule of Civil Procedure 41.[3]

As Rule 2-506 indicates, on the first occasion that a claim is voluntarily dismissed, the dismissal is "without prejudice" – *i.e.,* it is not an adjudication on the merits that would, under the doctrine of *res judicata*, foreclose a plaintiff from refiling the action. (A second notice of dismissal, however, does operate as an adjudication on the merits and forecloses refiling.) It is well settled under the federal rule that, even though a dismissal is without

[2] Maryland Rule 541(a)(2) (1956) was recodified as Rule 2-506 in 1984 and continued to require a stipulation of dismissal in certain circumstances. Rule 2-506 has been amended subsequently, but the provisions pertinent to this case are unchanged.

[3] Rule 2-506 also reflects a nearly universal understanding of the concept of "voluntary dismissal." *See* Black's Law Dictionary 537 (9th ed. 2009) (defining "voluntary dismissal" as "a plaintiff's dismissal of a lawsuit at the plaintiff's own request or by stipulation of all the parties").

3

prejudice, there is ordinarily no tolling of the statute of limitations and a plaintiff may be barred by limitations from re-filing an action that has been voluntarily dismissed "without prejudice." 9 Wright, Miller & Kane, Federal Practice & Procedure, §2367 (3d ed. 2008) ("[I]t seems well settled in the case law that the statute of limitations is not tolled by bringing an action that later is dismissed voluntarily under Rule 41(a)").[4] Thus, even though *res judicata* may not prevent a plaintiff who has voluntarily dismissed a claim from refiling the claim, the statute of limitations – if it has expired in the meantime – may do so. Although this Court has not had occasion to confirm that the same principle applies with respect to Rule 2-506, as with respect to the federal rule on which it is based, the Court of Special

---

[4] *See also Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000) ("[W]hen a suit is dismissed without prejudice, the statute of limitations is deemed unaffected by the filing of the suit, so that if the statute of limitations has run the dismissal is effectively with prejudice."); *Basco v. American General Ins. Co.*, 43 F.3d 964, 965-66 (5th Cir. 1994) ("A federal statute of limitations is *not* tolled when the plaintiff files a claim that later is voluntarily dismissed.") (emphasis in original); *Brown v. Hartshorne Public School Dist. No. 1*, 926 F.2d 959, 961 (10th Cir. 1991) ("It is hornbook law that, as a general rule, a voluntary dismissal without prejudice leaves the parties as though the action had never been brought. In the absence of a statute to the contrary, the limitation period is not tolled during the pendency of the dismissed action.") (citations omitted); *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 27 (6th Cir. 1987) ("a dismissal without prejudice leaves the situation the same as if the suit had never been brought, and that in the absence of a statute to the contrary a party cannot deduct from the period of the statute of limitations the time during which the action so dismissed was pending") (citation omitted); *Curtis v. United Transp. Union*, 648 F.2d 492, 495 (8th Cir. 1981) (rejecting a proposed exception to the rule that the entry of a voluntary dismissal without prejudice leaves the action as if suit had never been brought for purposes of the statute of limitations).

Appeals has characterized that conclusion as "[w]hat would seem to be certain to most"[5] and there is no evident reason to come to a contrary conclusion.

## B. Bringing a Claim under the Health Care Malpractice Claims Act

The Health Care Malpractice Claims Act ("HCMCA"), codified at Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §3-2A-01 *et seq.*, establishes procedures for all "claims, suits, and actions ... by a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought." CJ §3-2A-02(a)(1). The HCMCA creates a mandatory arbitration system for all medical malpractice claims alleging damages over a certain limit in order to weed out non-meritorious claims and reduce the costs of litigation. *Walzer v. Osborne*, 395 Md. 563, 582, 911 A.2d 427 (2006).

Pertinent to this case, the HCMCA sets forth the process that an individual must follow as a prerequisite to bringing a civil action in court. The individual must first file a claim with the Health Care Alternative Dispute Resolution Office ("HCADRO"). CJ §3-2A-04(a)(1)(i). The claimant must then file, within 90 days of filing the claim, a certificate of a qualified expert[6] with "a report of the attesting expert attached." CJ §3-2A-04(b)(1), (3).

The expert certificate and report must attest that the treatment in question departed from the standard of care and that the departure was the proximate cause of the claimant's

---

[5] *Bi v. Gibson*, 205 Md. App. 263, 264, 45 A.3d 305 (2012).

[6] A "qualified expert" may not devote more than 20 percent of the expert's professional activities to "activities that directly involve testimony in personal injury claims." CJ §3-2A-04(b)(4).

alleged injury. CJ §3-2A-04(b)(1)(i).[7] (No certificate or report need be filed if the sole issue is lack of informed consent. CJ §3-2A-04(b)). The expert report is an integral part of the certificate – the failure to attach an expert report is tantamount to filing no certificate at all. *Walzer*, 395 Md. at 578-79. Defending parties, if they contest liability, must then file their own expert certificate and report attesting to their compliance with the standard of care. CJ §3-2A-04(b)(2), (3). The expert certificate and report requirement is a mechanism to reduce the number of frivolous claims by requiring the parties to substantiate the merit of their claims and defenses early in the process. *See Carroll v. Konits*, 400 Md. 167, 199-201, 929 A.2d 19 (2007) (1986 amendment adding expert certificate requirement to HCMCA was "intended to curtail frivolous malpractice claims").

Once the claimant has filed an expert certificate and report, the claimant may either proceed with arbitration or, in the alternative, unilaterally waive arbitration and file a complaint in a circuit court. *See* CJ §3-2A-06B.

A circuit court is to dismiss a complaint without prejudice if the claimant fails to timely file an expert certificate and report. CJ §3-2A-04(b)(1)(i); *Walzer*, 395 Md. at 578-79. Although the statute mandates that the dismissal be without prejudice, a claimant may be barred from refiling if the statute of limitations has expired in the interim. To ameliorate the

---

[7] The statute does not elaborate on the contents of the expert report. It appears, however, that the purpose of the report is to supplement the conclusions in the certificate by providing additional details and explaining how the health care provider departed from the standard of care. *Walzer*, 395 Md. at 583; *see also Carroll v. Konits*, 400 Md. 167, 172, 929 A.2d 19 (2007) (affirming the dismissal of a claim when the expert report and certificate failed to identify with specificity the negligent physician or state that the defendant breached the standard of care and proximately caused the injuries).

possibility that a claim dismissed without prejudice for failure to file a timely certificate might be barred by the concurrent running of the limitations period, the statute includes several provisions for enlarging the period of time for filing the expert certificate and report.[8] Nevertheless, a failure to file both the certificate and report within the statutory period and any extension will result in dismissal of a complaint.

## C.      *Limitations for Malpractice Actions*

*The Statute of Limitations – CJ §5-109*

A medical malpractice claim must be filed within the earlier of five years from the date the injury was committed or three years from the date the injury was discovered.  CJ §5-109(a).  The filing of a claim with HCADRO in accordance with CJ §3-2A-04 constitutes the filing of an action for statute of limitations purposes.  CJ §5-109(d).

---

[8] The Legislature has provided "three distinct, but complementary, escape valves." *Narvarro-Monzo v. Washington Adventist Hosp.*, 380 Md. 195, 204, 844 A.2d 406 (2004). First, although CJ §3-2A-04(b)(1)(i) requires the expert certificate and report to be filed within 90 days from the date the claim is filed, that deadline will automatically be extended another 90 days if the statute of limitations expires during the initial 90 days and the failure to file a certificate during that period was neither willful nor the result of gross negligence. CJ §3-2A-04(b)(1)(ii); *McCready Memorial Hosp. v. Hauser*, 330 Md. 497, 508, 624 A.2d 1249 (1993) (holding that the 90-day extension commences without the necessity of request upon the expiration of the initial 90-day period).  Second, the Director of HCADRO (or an arbitration panel chairman) must grant an extension for filing an expert certificate upon a showing of good cause.  CJ §3-2A-04(b)(5).  Third, both the HCADRO Director and an arbitration panel chairman have general discretion to extend time limitations in CJ §3-2A-04, which would include the time for filing the expert certificate, for good cause shown.  CJ §3-2A-05(j).

7

*The Savings Provision – CJ §5-119*

CJ § 5-119 provides a limited exception to the limitations period when a civil action or claim has been dismissed once for failure to file an expert report in accordance with CJ §3-2A-04(b)(3). In full, CJ §5-119 states:

> (a)  (1)   This section does not apply to a voluntary dismissal of a civil action or claim by the party who commenced the action or claim.
>
> (2)   This section applies only to a civil action or claim that is dismissed once for failure to file a report in accordance with § 3-2A-04(b)(3) of this article.
>
> (b)   If a civil action or claim is commenced by a party within the applicable period of limitations and is dismissed without prejudice, the party may commence a new civil action or claim for the same cause against the same party or parties on or before the later of:
>
> (1)   The expiration of the applicable period of limitations;
>
> (2)   60 days from the date of the dismissal; or
>
> (3)   August 1, 2007, if the action or claim was dismissed on or after November 17, 2006, but before June 1, 2007.

Thus, if a claimant commences a medical malpractice claim within the period of limitations and the claim is dismissed without prejudice for failure to file an expert report, the claimant has up to 60 days to file a new civil action for the same cause against the same parties, even if the statute of limitations has otherwise run in the interim. This grace period does not apply, however, when there is a voluntary dismissal by the plaintiff.

8

The issue in this case is whether a plaintiff is precluded under CJ §5-119(a)(1) from refiling a dismissed claim under CJ §5-119(b) when the voluntary dismissal is effected by a stipulation of dismissal. In other words, does the exclusion in CJ §5-119(a)(1) of a "voluntary dismissal of a civil action or claim by the party who commenced the action" encompass a voluntary dismissal by stipulation signed by all the parties?

### D.    Ms. Wilcox's Claim

*Alleged malpractice*

Petitioner Lydia Wilcox[9] was referred to Respondent Tristan Orellano, a physician who practices general surgery, for treatment of suspected breast cancer in September 2004.[10] A biopsy confirmed the existence of cancer and Dr. Orellano performed an operation on her right breast on October 26, 2004.

After the surgery, Ms. Wilcox experienced swelling and redness in her right breast. Her radiation oncologist was unable to begin radiation treatment because of the swelling and placed Ms. Wilcox on antibiotics to treat a suspected infection. Ms. Wilcox called Dr. Orellano twice in December 2004 complaining of the swelling and discomfort and discussed the swelling and redness at an appointment with him that month. Dr. Orellano advised her to remain on the antibiotics, wear a support bra, and seek further follow-up treatment with

[9] David Wilcox, Ms. Wilcox's husband, who was a claimant in HCADRO and a plaintiff in the circuit court action, is also a Petitioner in this appeal. For ease of reference, we will refer to the Petitioners as Ms. Wilcox.

[10] These facts are derived from the complaint filed in this action. In the context of a motion to dismiss a complaint, a court assumes the truth of the facts pled in the complaint and all inferences reasonably drawn from those facts. *See Carroll*, 400 Md. at 176.

her radiation oncologist. Dr. Orellano did not prescribe any treatment. Ms. Wilcox last visited Dr. Orellano on January 26, 2005, when he again noted the continued swelling and redness and her inability to commence radiation treatment but prescribed no treatment.

In March 2005, Ms. Wilcox moved to North Carolina and began seeing a new radiation oncologist. Ms. Wilcox received radiation therapy but the swelling and redness continued. In June 2005, tests confirmed that she had a MRSA infection.[11] The infection grew worse, and additional infections developed, necessitating treatment in August and September 2005. Ms. Wilcox was required to visit a medical facility on a daily basis for approximately nine months for treatment of the infected areas. On March 17, 2006, Ms. Wilcox had surgery to resolve the infections.[12]

*First Claim and Voluntary Dismissal*

Ms. Wilcox first filed a claim against Dr. Orellano with HCADRO on June 12, 2008. HCADRO granted an automatic 90-day extension under CJ §3-2A-04(b)(1)(ii), which allowed Ms. Wilcox a total of 180 days from June 12, 2008 to early December to file an expert certificate and report. Ms. Wilcox requested and obtained an additional extension until December 26, 2008. On December 23, 2008 – three days before the expiration of that

---

[11] MRSA is an acronym for a strain of bacteria known as methicillin-resistant staphylococcus aureus, which has become resistant to most antibiotics used to treat infections. *Hashmi v. Bennett*, 416 Md. 707, 710 n.2, 7 A.3d 1059 (2010).

[12] At oral argument, counsel for Dr. Orellano advised that the 2006 surgery had been inaccurately described in their brief and other pleadings – and as a result, in the opinion of the Court of Special Appeals – as a mastectomy. In fact, the complaint describes the surgery as "an excision of the right breast and axillary abscess cavities," which indicates the removal of significantly less tissue than a mastectomy.

extension – Ms. Wilcox filed a certificate of a qualified expert, but did not attach an expert report.

Ms. Wilcox then waived arbitration and filed a complaint in the Circuit Court for Howard County on May 14, 2009. The complaint alleged that Dr. Orellano was negligent in failing to diagnose and treat her post-surgical infection and included counts of negligence, breach of contract, and loss of consortium. Ms. Wilcox did not allege that Dr. Orellano was negligent in performing the initial surgery or that he had chosen an inappropriate surgical procedure. Dr. Orellano answered the complaint a month later.

In September 2009, Dr. Orellano moved to dismiss the complaint for failure to attach an expert report as required by CJ §3-2A-04(b)(3). On October 14, 2009, before the court considered that motion, Ms. Wilcox voluntarily dismissed the complaint. Because an answer had already been filed, she needed to obtain the assent of Dr. Orellano. A stipulation of dismissal signed by the attorneys for both parties was filed to effectuate the voluntary dismissal.

*Second Claim and Dismissal on Limitations Grounds*

Approximately a week after Ms. Wilcox dismissed her complaint in the Circuit Court for Howard County, she filed a second claim against Dr. Orellano with HCADRO. This claim not only alleged that Dr. Orellano was negligent in failing to treat her post-surgical infection, as her original claim had alleged, but also included new allegations that Dr. Orellano had been negligent in performing the surgery – in particular, that he had undertaken a surgical procedure greater in scope than had been recommended by Ms. Wilcox's treating

11

oncologist and thereby increased the risk of infection. This time, Ms. Wilcox's claim was accompanied by an expert certificate with an expert report attached.

In April 2010, Ms. Wilcox waived arbitration as to her second claim. On May 14, 2010, she filed a three-count complaint that was similar to her first complaint and that also included the new claim of negligence related to her initial surgery. This time, however, she filed suit in the Circuit Court for Prince George's County instead of the Circuit Court for Howard County.

Dr. Orellano moved to dismiss the complaint on limitations grounds. The Circuit Court initially denied that motion. The Circuit Court held that Ms. Wilcox's claim accrued by March 2006, at the latest, and therefore her claim had to be filed by March 2009. The Circuit Court reasoned that even though the second claim was not filed until October 2009, it was not barred by the statute of limitations because it was essentially an extension of the first claim filed in June 2008.

Dr. Orellano sought reconsideration of his motion to dismiss after the Court of Special Appeals held, in *Bi v. Gibson*, 205 Md. App. 263, 45 A.3d 305 (2012), that, if a civil action is voluntarily dismissed pursuant to Rule 2-506(a), any subsequent similar action must still be filed within the applicable period of limitations. In other words, the filing of the initial complaint did not toll limitations with respect to the second, similar complaint.[13] The Circuit

---

[13] In *Bi*, the Court of Special Appeals reasoned that statutes of limitations are to be strictly construed and applied, subject to certain well-recognized exceptions, none of which applied to the case before it. The court further observed that the fact that Rule 2-506 allows for the voluntary dismissal of a complaint "without prejudice" itself provides no authority

(continued...)

Court reconsidered and dismissed the complaint. The Circuit Court concluded that the statute of limitations expired at the latest in March 2009 and, given that Ms. Wilcox's second claim was not filed until October 2009, her complaint based on that claim was untimely. The court concluded that her second claim did not come within the scope of CJ §5-119(b) because she had voluntarily dismissed her first complaint and under CJ §5-119(a)(1), the grace period did not apply.

Ms. Wilcox appealed the dismissal of her second complaint. The Court of Special Appeals affirmed the decision of the Circuit Court in a reported decision. 217 Md. App. 417, 94 A.3d 127 (2014). We then granted a writ of certiorari to consider whether CJ §5-119 provides relief from the running of limitations in these circumstances.

## II

## Discussion

### A.  *Standard of Review*

This case presents a question of statutory interpretation. As indicated above, Ms. Wilcox asserts that her initial medical malpractice claim was filed within the period of

---

[13] (...continued)
for extending a period of limitations. Neither party in this case questions the correctness of that decision. As noted earlier, the conclusion reached by the Court of Special Appeals in *Bi* is consistent with the federal case law under Federal Rule of Civil Procedure 41, on which Maryland Rule 2-506 is based. *See* Part I.A. of this opinion. In any event, the savings provision of CJ §5-119(b) would be completely unnecessary if the filing of an initial action later voluntarily dismissed tolled limitations for a second similar action.

limitations.[14]  Her second claim, which was initiated in October 2009 after dismissal of the

first, was filed after the period of limitations would ordinarily expire.  There is no dispute

that CJ §5-119(b) may provide relief from the expiration of the statute of limitations for up

to 60 days when a timely-filed medical malpractice claim is dismissed without prejudice for

failure to file an expert report.  And there is no dispute that this grace period is not available

in cases in which an initial complaint has been voluntarily dismissed.  The only issue

concerns the interpretation of CJ §5-119(a)(1) – in particular, whether it forecloses

application of the grace period in CJ §5-119(b) when a plaintiff in a medical malpractice

action voluntarily dismisses a complaint by means of a stipulation of dismissal, as opposed

to a notice of dismissal.  As this is a question of law, we accord no special deference to the

decisions of the Circuit Court or Court of Special Appeals.

## B.    *Whether the Savings Provision of CJ §5-119 Applies*

As noted above, CJ §5-119(a)(1) provides that "[t]his section does *not* apply to a

voluntary dismissal of a civil action or claim by the party who commenced the action or

claim."  (emphasis added).  Ms. Wilcox voluntarily dismissed her initial action in the only

---

[14] In his brief before us, Dr. Orellano argues that, regardless of the interpretation of CJ § 5-119(a), Ms. Wilcox's *first* claim related to the complaint filed in Howard County was itself barred by limitations.  He further reasons that the grace period in CJ §5-119(b) applies only "[i]f a civil action or claim is commenced by a party within the applicable period of limitations" and thus, the timeliness of the first claim is relevant to the applicability of CJ §5-119(b).  Although Dr. Orellano asserted unsuccessfully in the Circuit Court that the first claim was time-barred, this argument was not included in his brief in the Court of Special Appeals, or in a cross-petition for certiorari, and was first advanced in his brief to us.  We need not resolve whether it was properly preserved for our review, given our resolution of the issue that clearly was preserved.

14

way that she could without court permission, as Rule 2-506(a) requires the assent of the opposing party for a voluntary dismissal after an answer has been filed. Under a straightforward reading of CJ §5-119(a)(1), the savings provision of CJ §5-119(b) does not apply in this case because there was a "voluntary dismissal [of that action] by the party who commenced the action."

Ms. Wilcox advances two arguments why we should not read the statute this way. First, she argues that the reference to "voluntary dismissal" in paragraph (a)(1) only encompasses a voluntary dismissal by a plaintiff without the assent of the opposing party – *i.e.*, only a voluntary dismissal effected before the filing of an answer. Second, she argues that paragraph (a)(2) of the statute – which limits the savings provision to medical malpractice actions – somehow frees her case from the limitation of paragraph (a)(1). In our view, neither argument has merit.

*Whether the usual definition of "voluntary dismissal" applies for purposes of (a)(1)*

Ms. Wilcox asserts that, given the statute's remedial purpose of saving certain medical malpractice claims from the operation of the statute of limitations, the phrase "voluntary dismissal ... by the party who commenced the action or claim" in paragraph (a)(1) should be construed to apply only to a voluntary dismissal accomplished unilaterally by the plaintiff. However, the statute does not include its own special definition for "voluntary dismissal." In the absence of a special definition, we assume the Legislature used the phrase in accordance with its ordinary meaning. *Tatum v. Gigliotti*, 321 Md. 623, 628, 583 A.2d 1062 (1991). In particular, when a phrase in a statute refers to a specific procedural mechanism,

15

we presume that reference to be to the ordinary understanding of the procedural term. *See Dean v. Pinder*, 312 Md. 154, 161, 538 A.2d 1184 (1988) ("when the term in a statute is a legal term, absent any legislative intent to the contrary, the term is presumed to be used in its legal sense").

The longstanding Maryland rule on voluntary dismissals by "a party who has filed a complaint" encompasses a dismissal by stipulation after an answer has been filed. That was certainly the case when CJ §5-119 was enacted in 2007. Chapter 324, Laws of Maryland 2007. The Legislature is presumed to be aware of the rule concerning voluntary dismissals by plaintiffs and, because the Legislature did not indicate to the contrary in the statute, it follows that the Legislature did not intend for some other meaning to apply for purposes of paragraph (a)(1).[15] A review of the legislative files relating to the enactment of CJ §5-119

[15] Ms. Wilcox attempts to draw a textual distinction between the statute and the rule. She notes that CJ §5-119(a)(1) refers to a dismissal by "*the* party" that filed the action, while Rule 2-506(a) authorizes a voluntary dismissal by "*a* party" who has filed a complaint, counterclaim, cross-claim, or third-party claim. She argues that the definite article indicates that paragraph (a)(1) is limited to dismissals involving action by the plaintiff alone while the use of the indefinite article in the rule signals a broader usage, *i.e.,* paragraph (a)(1) does not encompass dismissals by voluntary stipulation, as such cases are not dismissed by "the" party who filed the complaint.

The rule is indeed broader, but not in the way that Ms. Wilcox suggests. The rule governs voluntary dismissals not only by the party that commenced the action by filing a complaint, but also dismissals by other parties, such as defendants who assert counterclaims, which may or may not have occurred in any particular case – therefore the reference to "a party." The statute only concerns voluntary dismissals of complaints – a necessary pleading in any civil action – therefore, the reference to the "the party" that filed the complaint. The notion that the Legislature intended to limit the type of voluntary dismissal for purposes of CJ §5-119(a)(1) in such an opaque manner as changing an "a" to "the" is just the sort of forced or subtle interpretation that a court construing a statute is to avoid. *See Baltimore Sun Co. v. Univ. of Maryland Med. Sys. Corp.*, 321 Md. 659, 669, 584 A.2d 683 (1991).

discloses no indication that the Legislature intended any special or peculiar meaning of "voluntary dismissal."[16]

Ms. Wilcox notes that the consequence of employing the usual meaning of "voluntary dismissal" in the interpretation of paragraph (a)(1) is that the grace period in CJ §5-119(b) does not apply unless the claim has been dismissed *by a court* at the behest of the opposing party. Ms. Wilcox argues that this result "flouts common sense" and that it could not have been the Legislature's intent to require a court to effect the dismissal because it is more efficient, both for the litigators and the court, to permit the parties to dismiss the claim by stipulation when it is clear that a dismissal is mandated. Ms. Wilcox argues that requiring judicial action to activate the savings provision wastes judicial resources and increases the cost of litigation, contrary to the purpose of the HCMCA. We are unpersuaded for several reasons.

First, Ms. Wilcox's argument is really a policy argument for allowing all voluntary dismissals based on a defective expert certificate to have the benefit of the savings provision – in other words, the Legislature should not have included paragraph (a)(1) in CJ §5-119 at all. That is not our call.

---

In fact, to reach the ultimate conclusion she favors, Ms. Wilcox actually reads words into the statute – *i.e.*, that the limitation in (a)(1) applies to a voluntary dismissal "by *only* the" party that initiated the action. We shall not, however, read additional words into the statute. *See Walzer*, 395 Md. at 572.

[16] The legislative history of CJ §5-119 is recounted in some detail by the Court of Special Appeals in its opinion. 217 Md. App. at 425-26.

17

Second, given that paragraph (a)(1) is in the statute and cannot be ignored, Ms. Wilcox's contention that it should be applied only to voluntary dismissals that can be effected without court permission or the assent of the adversary leads to arbitrary or nonsensical results. Consider the following example. Plaintiff A files a medical malpractice action with a defective expert certificate. Plaintiff A realizes the defect almost immediately and voluntarily dismisses his complaint before an answer is filed pursuant to Rule 2-506 without need for the court's permission or the adversary's agreement. In the meantime, the period of limitations has expired. Even Ms. Wilcox would concede that Plaintiff A does not get the benefit of the savings provision and is barred from filing a new action.[17]

Plaintiff B files an identical action with all other circumstances the same, except that Plaintiff B does not realize the defect in the complaint until the defendant has filed an answer (which perhaps, as in this case, asserts a limitations defense). Plaintiff B then voluntarily dismisses the complaint but under Rule 2-506 needs to do so by stipulation. Again, limitations has run. But under Ms. Wilcox's interpretation of paragraph (a)(1), unlike Plaintiff A, Plaintiff B would have the benefit of the savings provision and would not be barred from filing a new complaint. This would seemingly make the applicability of the savings provision turn on whether a defendant had filed an answer, an odd if not perverse result.

---

[17] We set aside for the moment Ms. Wilcox's contention that paragraph (a)(1) does not apply to medical malpractice actions at all. That argument is discussed in the next section of this opinion.

Finally, the facts of this case suggest a policy reason why the Legislature would not extend the savings provision to voluntary dismissals. The stipulation of dismissal in this case did not state the basis for the dismissal. The reason for the dismissal is critical because CJ §5-119 applies "only" when the claim has been dismissed for failure to file an expert report in accordance with CJ §3-2A-04(b)(3). *See* CJ §5-119(a)(2). While there seems little reason to doubt that the incomplete expert certificate was a motivating factor in the dismissal in this case, Ms. Wilcox did more than simply correct that defect. When the complaint was refiled, it was filed in a different circuit court. Moreover, the allegations of negligence had changed, now targeted for the first time at the initial surgery in addition to the follow-up care. It may well be that the Legislature, in creating a safety valve "only" for actions dismissed because of an incomplete expert certificate, did not wish to allow the savings provision to be used to allow a plaintiff to do such things as amend a complaint outside the period of limitations or obtain a change of venue.[18]

*Whether (a)(2) negates the application of (a)(1)*

In an effort to find some support in the statutory language, Ms. Wilcox suggests that the two paragraphs that limit the scope of the statute in CJ §5-119(a) operate in exclusive spheres. She asserts that the exclusion in paragraph (a)(1) for actions previously the subject

---

[18] To be clear, we are not ruling on whether Ms. Wilcox could have obtained change of venue or amended her original complaint to expand the allegations of negligence in a way that would relate back to the original filing. Rather, these circumstances illustrate that significant changes might be made in the course of a voluntary dismissal and re-filing that might expand the effect of the savings provision beyond its intended purpose.

of a dismissal does not apply to actions described in paragraph (a)(2) – the paragraph that limits the savings provision to medical malpractice actions. In effect, she is arguing that the statute contains two savings provisions – one for medical malpractice actions that is not limited by a prior voluntary dismissal and a second savings provision, presumably for all other civil actions, that is limited to cases where there has not been a prior voluntary dismissal.

This interpretation finds no footing in the statute. Paragraph (a)(1) states that "this section" – *i.e.*, CJ §5-119 in its entirety – does not apply in a case where there was a previous voluntary dismissal. Paragraph (a)(2) states that "this section" – again, CJ §5-119 in its entirety – "applies only" to medical malpractice actions dismissed for failure to file an expert report. There is nothing contradictory in these two limitations, nor any language to suggest that one excludes the operation of the other. And there is nothing odd in stating scope limitations separately – those who comply with a traffic sign setting HOV lane restrictions are not exempt from a separate sign setting a speed limit.

Ms. Wilcox attempts an argument based on legislative history. She notes that the bill that ultimately enacted CJ §5-119 originally would have created a grace period for the re-filing of any civil action that was terminated without a final judgment on the merits. Senate Bill 309 (2007), first reader. As the bill progressed through the General Assembly, it was narrowed in scope, as the Senate amended the bill to add what became paragraph (a)(1)[19] and

---

[19] The Senate also amended the bill to clarify that the savings provision only applied if the dismissal of the action had been without prejudice. As noted by the Court of Special
(continued...)

20

the House further amended it to add paragraph (a)(2) and limit the provision to medical malpractice actions dismissed once as a result of an incomplete expert report. She argues that, because paragraph (a)(2) was added to the bill after paragraph (a)(1), medical malpractice actions are not subject to the limitation of paragraph (a)(1).

If, as Ms. Wilcox contends, the Legislature had intended the savings provision of CJ §5-119(b) to apply to medical malpractice claims regardless of the manner of dismissal, it would have eliminated paragraph (a)(1) when enacting paragraph (a)(2). The fact that it did not do so indicates that the Legislature intended to exclude from the savings provision any malpractice claim that had previously been voluntarily dismissed. *See* Fiscal and Policy Note (Revised) for Senate Bill 309 (2007) (stating that the bill authorizes a party to commence a new health care malpractice action but noting that the bill "does not apply to a voluntary dismissal"). Thus, the legislative history confirms what the statute's plain language indicates – that the savings provision does not apply to any medical malpractice claim that was previously voluntarily dismissed.

---

[19] (...continued) Appeals, the Senate presumably amended the legislation in response to testimony from interested parties that argued the legislation effectively eliminated the statute of limitations and created the potential for harassment of defendants by plaintiffs who could file, voluntarily dismiss, and re-file claims continuously. *See e.g.*, Memorandum for Legislative Committee, Maryland Judicial Conference, to Senate Judicial Proceedings Committee (Feb. 20, 2007) (arguing the proposed legislation would permit a plaintiff to voluntarily dismiss an action for any reason, then refile, regardless of the statute of limitations). We note that a concern about repeated re-filings of dismissed complaints is, to some extent, unfounded as Rule 2-506(d) provides that a second notice of dismissal operates as an adjudication on the merits.

## III

## Conclusion

Ms. Wilcox failed to file the required expert report to prosecute her first claim against Dr. Orellano and voluntarily dismissed her complaint. Her second claim, which resulted in the current action, was filed after the expiration of the relevant period of limitations and would ordinarily be barred on that ground. While the Legislature created a special savings provision for medical malpractice actions, it did not extend that grace period to actions that had previously been the subject of a voluntary dismissal. In our view, that exclusion encompasses a voluntary dismissal after a defendant has filed an answer, for which a plaintiff is required to obtain the assent of the defendant. Accordingly, Ms. Wilcox cannot rely on the saving provision of CJ §5-119(b) to refile her untimely claim because she voluntarily dismissed her previous claim.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**